ALDEN *et al. v.* EARLE.

*(Superior Court of New York City, General Term.* January 7, 1889.)

FACTORS AND BROKERS—REAL-ESTATE AGENTS—COMMISSIONS.

Defendant owned a building which was for rent, and plaintiffs, real-estate bro-
kers, sent H. to see it, with a view of taking a lease. H. had an interview with
defendant on the subject, without disclosing that plaintiffs had sent him. Plain-
tiffs saw defendant, and got his terms, informing him what their commission would
be for effecting a lease, to which defendant assented. They then made an offer on
behalf of H., better than the terms defendant had named, and the latter said that
he would think about it, and inform them. After other negotiations with H., plain-
tiffs wrote several letters to defendant about the lease, only the last of which was
answered; defendant declining the proposition, and closing negotiations. Ten days
aferwards H. leased the premises from a broker who had the property in charge
when the negotiations were begun. *Held,* in the absence of any evidence that de-
fendant revoked plaintiffs' authority in bad faith, as a device to secure their services
for nothing, that he had the right to revoke it; and, having done so before an agree-
ment was entered into, plaintiffs conld recover no commission from him.

Appeal from jury term.

Action by William H. Alden and Morris E. Sterne against William P.
Earle, to recover commissions as real-estate brokers. Verdict and judgment
for plaintiffs, and defendant appeals.

Argued before SEDGWICK, C. J., and INGRAHAM, J.

*Hamilton Odell,* for appellant. *Simon Sterne,* for respondents.

INGRAHAM, J. The action is brought by the plaintiffs, a real-estate broker,
to recover commissions for renting certain premises of the defendant. The
obligation that a broker assumes and that he must perform, before he is en-
titled to commissions, is stated in *Sibbald* v. *Iron Co.,* 83 N. Y. 381. FINCH,
J., in delivering the opinion of the court in that case, says: "The duty he
undertakes, the obligation he assumes, as a condition of his right to demand
commissions, is to bring the buyer and seller to an agreement." The court,
among other cases, cited the case of *Wylie* v. *Bank,* 61 N. Y. 415, and in
speaking of that case it is said: "It was held that, to entitle the broker to
commissions, he must produce a purchaser ready and willing to enter into a
contract on the employer's terms. This implies and involves the agreement
of buyer and seller,—the meeting of their minds, produced by the agency of
the broker." And at page 382 it is said: "But in all the cases, under all and
varying forms of expression, the fundamental and correct doctrine is that the
duty assumed by the broker is to bring the minds of the buyer and seller to
an agreement for a sale, and the price and terms on which it is to be made,
and until that is done his right to commissions does not accrue." Another
principle established by that case is: "To such a contract as existed in the
present case, where no time for the continuance of the contract is fixed by its
terms, either party is at liberty to terminate it, subject only to the ordinary
requirements of good faith."

Applying these principles to the facts of this case, it is clear that the plain-
tiffs had not performed the work they were employed to do, the performance of
which was necessary before they were entitled to compensation, as they had not
effected the leasing of the premises before their authority was revoked. There
was no employment of the plaintiffs by the defendant to obtain a tenant for
the premises. Another broker was in charge, had the keys of the building,
and had a sign on the building that persons wishing to rent should apply to
him. The plaintiffs sent Mr. Hulbert to look at the premises. He obtained
admission to the property, and had an interview with the defendant, without
disclosing the fact that he had been sent by the plaintiffs. Subsequently plain-
tiffs wrote two letters to the defendant, asking him to call on them in regard
to the property. Defendant, however, did not call, and several days after-
wards one of the plaintiffs called at the defendant's house, and had an inter-

view with him.   Subsequently another interview was had, at which plaintiffs stated that the commission would be 1 per cent. on the five-years lease, to which defendant said, "That is all right." Defendant then stated that "$11,000 a year would take the building to a good party on a lease," and plaintiff then made an offer on behalf of Mr. Hulbert of $11,000 for the first year, $11,500 for the second year, and $12,000 for the three years thereafter.   To that defendant said: "That looks very good; I will think it over, and let you know." There were subsequent negotiations between Hulbert and the defendant, and several letters were written by plaintiffs to the defendant, to which no answer was returned; and on January 31, 1887, plaintiffs wrote a letter to the defendant, in which they say: "After considerable work on our part, we have induced them again (Merwin, Hulbert & Co.) to say they will take your building, No. 26 West Twenty-Third street, upon the terms proposed by them, and let the rent commence on the 15th of April.   This they say is their best offer, and they desire to hear from us at once,—your acceptance or rejection,—as they have several other places in view." And in reply to that letter, on the same day, defendant wrote to plaintiffs: "The proposition you make for Messrs. Merwin, Hulbert & Co., for my building, 26 West 23d street, on the terms of five years' lease, I most respectfully decline.   The negotiation is now closed."

Up to this time it is evident that the plaintiffs had not performed their obligation.   They had not procured a tenant on terms satisfactory to the defendant.   At no time had the defendant appeared anxious to have anything to do with them, or encourage them to proceed on his behalf; and, although the evidence would justify a finding that there was an obligation to pay them the commissions if they had procured a tenant who had agreed to his terms and was satisfactory to him, there certainly was nothing that was said or done that would prevent the defendant at any time revoking the authority that the plaintiffs had, and that he did.   The plaintiffs subsequently endeavored to obtain from Mr. Hulbert a more favorable offer, and failed, and then apparently abandoned the negotiations, and had no further connection with the property. There is not the slightest evidence of bad faith on behalf of the defendant. He made no further efforts to negotiate with Hulbert, or, so far as appears, to lease the property.   It does appear, however, that about 10 days afterwards Mr. Hulbert went to the broker who had charge of the property; made him a new offer for the premises on more advantageous terms than the offer made by the plaintiffs, which offer defendant subsequently accepted.   The efforts of plaintiffs had been unsuccessful.   They failed to bring the defendant and the proposed lessee to an agreement.   The negotiations were closed, and, as it was held in *Sibbald* v. *Iron Co., supra,* 387, they very plainly had acquired no right to the commissions for anything that might happen in the future, unless upon the sole and only ground that the defendant terminated the agency in bad faith, and as a device to get the benefit of the plaintiffs' labors without paying for them.   I believe, therefore, the complaint should have been dismissed.   The judgment should be reversed, and a new trial ordered.

SEDGWICK, C. J., concurs.