## DIETER *v.* FALLON.

*(Supreme Court, General Term, Third Department. November 26, 1890.)*

SPECIFIC PERFORMANCE—SUFFICIENCY OF CONTRACT.

　　F., owning a hotel and farm known as the "Lake View Hotel Property," and adjoining property known as the "Au Sable Chasm," negotiated personally and through brokers to convey the hotel property, and lease the other property, in exchange for land of D. After both parties had examined the other's property, F. made the following proposition: "I will exchange the Lake View property, meaning thereby in good faith all, without further detail, of real and personal property now in use or existing, and so called heretofore, when negotiating for the Fifth avenue, Gates avenue, and Patchen avenue properties, as heretofore spoken of, all properties to be mortgaged as spoken of, *i. e.*, 25,000, 10,000, & 12,000, respectively, for the New York properties, and said hotel property to be given with $10,000 in all only upon it, including what is now thereon or given up to make up $30,000, by Mr. D. P. S. Of course it is included in the above that, as to Chasm, all is, as already supposed, assented to,—lease 5 years, at $3,000, and 500 additional yearly, etc." D. wrote under such proposal: "I hereby accept. D." On the same day F. wrote D. that he had not attempted to go into formal detail, but meant it merely

to be "what, in effect, I already stated to you." After all the necessary papers had been prepared, F. refused to perform. *Held,* that the contract was sufficiently definite, and should be specifically enforced. MAYHAM, J., dissenting.

Appeal from judgment on report of referee.

Action by Absalom W. Dieter against Francis C. Fallon. From a judg-ment dismissing his complaint, the plaintiff appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Chester B. McLaughlin,* for appellant. *F. A. Rowe,* for respondent.

LEARNED, P. J. This is an action to compel the specific performance of a written agreement to exchange land. It was tried before a referee, and the referee decided that the written contract was incomplete, inoperative, and void, and ordered judgment for the defendant, with costs. The plaintiff ap-peals.

The right to a specific performance of a contract has always been held, to a certain extent, discretionary. Courts have refused to grant this relief when a contract was not certain in its terms. *Stanton* v. *Miller,* 58 N. Y. 192. So, also, where the contract, though not fraudulent, was hard or unreason-able. Sometimes they have refused this relief, because they thought better justice could be done by a recovery of damages. *Wilson* v. *Railway Co.,* L. R. 9 Ch. 279. If the learned referee in this case had thought that the plaintiff ought not to have the relief of a specific performance for any of these reasons, but that he might bring an action at law to recover damages, then the plaintiff would not be quite remediless. But, as the referee has decided that the contract is void, this decision probably bars any other action upon the contract; and it therefore becomes very important to consider the facts carefully. As early as July, 1888, the defendant had employed Messrs. Ward & Boswell of New York to procure a purchaser for property of the defendant at Au Sable Chasm. They negotiated for that purpose with the plaintiff, be-ginning about August of that year. The plaintiff had three pieces of prop-erty, viz., 2074 Fifth avenue, New York; 705 Gates avenue, Brooklyn; and 26 Patchen avenue, Brooklyn. The defendant went and examined the pieces of property. After negotiations had been pending for some time, the defend-ant went to his brokers above named, and Ward, one of them, said to him: "If you will make a proposition in writing just what you will do with him, [the plaintiff,] I will submit it to him, and if he accepts, all right." There-fore, the defendant wrote the following, and left it with them to be submit-ted to plaintiff for his acceptance: "NEW YORK, January 28, 1889.

"DEAR SIR: I will exchange the Lake View property, meaning thereby in good faith all, without further detail, of real and personal property now in use or existing, and so called heretofore, when negotiating for the Fifth av-enue, Gates avenue, and Patchen avenue properties, as heretofore spoken of, all properties to be mortgaged as spoken of, *i. e.,* 25,000, 10,000, & 12,000, respectively, for the New York properties, and said hotel property to be given with $10,000 in all upon it, including what is now thereon or given up to make up $30,000, by Mr. Dieter.

"Yours, etc.,                                      FRANCIS C. FALLON,

"I hereby accept.                                  A. W. DIETER.

"P. S. Of course it is included in above that, as to Chasm, all is, as al-ready supposed, assented to,—lease 5 years, at $3,000, and 500 additional yearly, etc.                                     FRANCIS C. FALLON,

"I hereby accept.                                  A. W. DIETER."

Defendant delivered this to Ward, to present to plaintiff. Ward did so soon after, and the plaintiff wrote, as above shown, in two places: "I here-by accept. A. W. DIETER." Of such acceptance defendant was duly noti-fied. This is the contract between the parties. On the same day defendant wrote plaintiff a letter of the same date informing him that defendant had

left with the brokers a statement of what he would do as to exchange. In this he said: "I did not attempt to go into formal detail or form at all, as I meant it merely to be what in effect I already stated to you." He proceeded to explain why he could make no better terms. Defendant afterwards examined plaintiff's title to the property above mentioned. On the 2d of February, 1889, plaintiff wrote defendant that he understood that the time for delivering deed was March 1st, and that, if he did not hear from defendant to the contrary, he would be at defendant's brokers' that day at 12 o'clock noon, ready to exchange deeds. Defendant had previously notified plaintiff, that he would prepare the lease. Plaintiff was at the brokers' that day and hour, ready to perform. Defendant was not present. Subsequently, plaintiff met defendant at the office of defendant's attorney, and had his deeds ready to deliver, and tendered them to defendant. The defendant had a deed of the Lake View Hotel, and a bill of sale of the property, and a proposed lease of the Chasm property for five years. The lease required the plaintiff to spend $1,200 a year in advertising, and the defendant insisted that the plaintiff should buy certain views, etc., at a cost of $700. The plaintiff refused to accept such terms and the defendant refused, and has ever since refused, to execute a deed of the hotel property or a lease of the Chasm.

It is plain that a contract was made between the parties. The proposal of defendant was written after long negotiations, and at the request of his brokers, to show just what he would do. It was intended for the plaintiff, was given to him by defendant's agents, and the terms were accepted by him. There was no question as to what property was intended by each party. On October previous, the plaintiff had gone with defendant, and had examined the Lake View Hotel and Chasm property; and the defendant had examined plaintiff's property on Fifth avenue, Gates avenue, and Patchen avenue. Each knew the exact property as to which they were negotiating; and the referee finds that, in the negotiations between them, these several pieces of property were mentioned and referred to by the words used by defendant in his proposal of January 28th. The defendant used the words by which the parties had in their conversations described the pieces of property, and that was sufficient. *Coleman* v. *Improvement Co.*, 94 N. Y. 229. But the learned referee held that, in other respects, the contract was so indefinite as to be inoperative. Now we must notice that the contract was drawn up by defendant. Unless we suppose that he intended to commit a fraud, we must believe that he intended to make a proposition which was definite, and could be understood and acted upon. Every reasonable construction in favor of the validity of the contract should be allowed to the plaintiff. It is said in the contract that all the properties are to be mortgaged "as spoken of." If the writing had stopped there it might be uncertain. But it proceeds: "*i. e.*, 25,000, 10,000, & 12,000, respectively, for the New York properties." The defendant urges that it does not appear what "25,000" means; whether pounds, dollars, or cents. It does not seem necessary to discuss that point. Our currency is not in pounds or piasters, it is in dollars. The mere omission of the dollar mark (which appears in the subsequent part of the paper) cannot make the meaning doubtful. The three lots belonging to plaintiff had just been mentioned, and defendant was to take them respectively, burdened with mortgages to these amounts. The hotel property was to have an incumbrance of $10,000 on it. The expression "to make up $30,000 by Mr. Dieter" is only an explanation of the reason why the total property is to be taken with this incumbrance.

The objection that the contract does not express the terms of the mortgages in detail is not fatal to its validity. There were already mortgages on all these pieces of property, the amount of which is not quite certain from the case. That part fixed the terms as to existing mortgages. And, as the defendant in drawing the papers did not specify any details, he could not com-

plain if any ordinary terms were inserted in the mortgages. In fact, when the plaintiff had executed his deeds, and presented them to defendant and his counsel soon after the 1st of March, no objection to them was made.

It is further objected that a part of the contract (contained in the subjoined memorandum) referring to the Chasm property is indefinite. The defendant says it is not plain which of the parties is to be lessor. As defendant was owner, he must be lessor. The Chasm, as was well understood by the parties, was an important matter in giving value to the hotel. The defendant had published a very elaborate account of the beauties and value of the hotel, and of its having a monopoly of the Chasm business. He explained his reason for endeavoring to sell the hotel to be "that the sole owner is an elderly lady." The plaintiff, however, acquired title in May, 1888, before these negotiations. Then in this postscript to the proposal he added: "Of course it is included in the above that as to Chasm, all is, as already supposed, assented to,—lease 5 years, at $3,000, and 500 additional yearly, etc." Now, the reference to the fact that they had assented to the terms which he proceeds to set forth is harmless. The important part is that the Chasm is to be leased, the length of time, and the rent. The term was to commence when the lease and the other papers were to be delivered. As no time was specified such delivery would be on reasonable demand. The rent was specified, $3,000 yearly with an advance of $500 each year. The term was five years. The defendant cites *Marshall* v. *Berridge*, 19 Ch. Div. 233, where it was held that an executory agreement for a lease did not satisfy the statute of frauds unless it could be collected from it what day the term is to begin. In the present case the principal part of the contract was the agreement to exchange property. As no time was mentioned when the exchange was to take place, it was for either party to tender performance on reasonable notice, and thereupon to require performance from the other party. *Altman* v. *Tillson*, 10 N. Y. St. Rep. 235; *Tipton* v. *Feitner*, 20 N. Y. 425. Then the language as to the Chasm is: "Of course it is included in the above that," etc.; that is to say, as a part of the contract for sale, it is agreed that the Chasm should be leased. Hence the lease of the Chasm is, by necessary construction, to begin with the sale of the hotel property. The whole arrangement was one transaction, which is apparent from all the negotiations, as well as from the defendant's advertisement of his hotel above mentioned. The inducement to purchase was the right for five years to the possession of the Chasm, and it would be unreasonable to say that there was any doubt as to the time when the lease should begin. It is objected by defendant that the deeds tendered by plaintiff were subject not only to the mortgages, but to the interest thereon. If that was wrong, objection should have been made. The defendant refused to complete the contract, and claimed that no contract had been made. It further appears that in January, 1889, the plaintiff applied to defendant's attorney for consent that he might lease the Fifth avenue property, and that consent was refused; that consequently it was not rented, and still remains (at the time of the trial) unrented.

The defendant gave no evidence in the case. We are therefore unable to say whether, on a second trial, it would appear that there should be a judgment for specific performance, or whether the plaintiff should be allowed only to recover damages. That is a question which we do not decide. The defendant, in his verified answer, states that on the 2d day of February, 1889, he leased the Chasm for nearly three years to William H. Macey, who is called "Manager for the Au Sable Chasm Company." This was before the time when the plaintiff met him in the office of his attorneys in New York, and when defendant offered him a lease of the Chasm, with the condition that he should spend $1,200 a year in advertising. Whether this allegation of the answer is true did not appear on the trial. Whether, if true, it would prevent a specific performance, or whether specific performance should be granted

of a part of the contract, with compensation for that which defendant cannot perform, are questions not before us.   We are of the opinion that the contract was not incomplete, inoperative, and void.   Judgment reversed.   New trial granted.   Referee discharged; costs to abide the event.

MAYHAM, J.   The plaintiff prosecutes this action to compel the specific performance by the defendant of an alleged contract between the plaintiff and defendant for the exchange of a farm and hotel property, called the "Lake View Hotel," including the personal property used in carrying on the hotel, with conveyances and transfer of the same, and also a leasing for five years of premises known as the "Au Sable Chasm Property," all in Essex county, by the defendant, for two lots in the city of Brooklyn, one known as "No. 715 Gates Avenue," and one as "No. 26 Patchen Avenue," also one lot in the city of New York, known as "No. 2074 Fifth Avenue," by the plaintiff.   The evidence relied upon to prove the contract sought to be enforced is in these words:　　　　　　　　　　　　　　　　　"NEW YORK, January 28, 1889.

"DEAR SIR:   I will exchange the Lake View property, meaning thereby in good faith all, without further detail, of real and personal property now in use or existence, and so called heretofore, when negotiating for the Fifth avenue, Gates avenue, and Patchen avenue properties, as heretofore spoken of, all properties to be mortgaged as spoken of, i. e., 25,000, 10,000, & 12,000, respectively, for the New York properties, and said hotel property to be given with $10,000 in all upon it, including what is now thereon or given up to make up $30,000, by Mr. Dieter.

"Yours, etc.,　　　　　　　　　　　　　　　FRANCIS C. FALLON.
"I hereby accept.　　　　　　　　　　　　　　A. W. DIETER.　.

"P. S.   Of course it is included in the above that, as to Chasm, all is, as already supposed, assented to,—lease 5 years, at $3,000, and 500 additional yearly, etc.　　　　　　　　　　　　　　　　FRANCIS C. FALLON.
"I hereby accept.　　　　　　　　　　　　　　A. W. DIETER."

This proposition was written by the defendant, and signed by him at the office of and left with one Ward, who was acting as broker, who communicated to plaintiff the fact that such proposition was at his office, and the plaintiff thereafter signed the acceptance.   On the trial the referee admitted certain parol evidence tending to prove the identity of the property referred to in the above correspondence, and finds that, aided by such evidence, the ambiguity appearing in the writing as to identity of the land is explained, and that the land and premises described in the complaint are the same to which reference is made in the correspondence or written proposition and acceptance, and that the written proposition and written acceptance thereof constitutes the only written agreement between the parties in reference to this land.   The referee also finds that such written contract is per se indefinite, vague, and incomplete as to essential particulars; that the meaning and intent of the parties cannot be spelled out or inferred from its terms with reasonable certainty; that the references therein are to oral conferences and conversation not disclosed in the writing, but essential to full understanding of the agreement between the parties, and no reference is made in the writing to any other writing or paper furnishing any light as to the meaning and intent of the parties.   And the referee finds that no written contract, such as is alleged in the complaint, for the exchange and leasing of property, is proved; that the written contract proved is incomplete, inoperative, and void, and no action for a specific performance of the same can be maintained, and consequently dismissed the plaintiff's complaint.   Upon these writings alone, it is quite apparent that no decree for a specific performance could be predicated.   The writings leave too much for conjecture.   The ellipses would have to be supplied either by parol extrinsic evidence or filled up by judicial speculation, neither of which could be indulged in with safety to the parties.

The appellant insists that the omissions in the writing may be or are supplied by the correspondence, the maps, and the oral proofs offered on the trial. If the intention of the parties had been fully expressed, in other words, if the writings had not omitted to specify the terms of the agreement, and that omission was not apparent upon the face of the papers themselves, the offer in writing, and its acceptance in writing, would be a good execution of a contract relating to real estate within the statute of frauds. If it was not apparent on the face of the writings that there were rights of the parties connected with the transaction, and essential to the carrying out of the intention of the parties, not expressed in the paper, the expression of consideration, the signing of the offer by one party, and the signing of the acceptance by the other, would be a good execution of the agreement. But the difficulty does not arise out of a failure to comply with the provisions of the statute of frauds, but rather out of the fact that the court is required to decree a specific performance of an agreement where it is impossible, from an inspection of the agreement, to determine in what a performance consists. It is a general and elementary rule that the court will not decree a specific performance of a contract unless its provisions are free from reasonable doubt. Parsons, in his treatise on Contracts, lays down the general rule. "The contract of which performance is sought must be clearly proved, and its terms should be so specific and distinct as to leave no reasonable doubt of the meaning." 3 Pars. Cont. (7th Ed.) 354. In *Pray* v. *Clark*, 113 Mass. 283, it was held that the agreement in a lease to renew it at its expiration, the rent to be proportionate to the value of the premises at that time, but with no provisions for determining that valuation, is too vague to be enforced in equity. The uncertainty in this case does not arise out of doubt as to the identity of the land, for, if it did, the parties could clear up any ambiguity upon that subject by parol testimony. *Waring* v. *Ayres*, 40 N. Y. 357, and cases there cited. But the doubt in this case grows out of the uncertainty arising out of the incumbrances which are referred to in the contract as follows: "All properties to be mortgaged as spoken of; *i. e.*, 25,000, 10,000, and 12,000, respectively, for the New York properties." It will be observed that this writing speaks of these amounts respectively for the New York properties, but the writing does not describe them as in New York; but, if it may be ascertained by parol which of the lots is to be incumbered by $25,000, and which by $10,000, and $12,000, yet a decree for specific performance would require the court to go outside of the contract to answer that important question.

· Again, on what property is the $10,000 designated as "hotel property?" The writing proposes to exchange "all the real and personal property now existing, and so called heretofore when negotiating." Can the court by a decree give effect to that provision and determine how much of that $10,000 shall be charged against the personal estate, and how much against the realty? But the plaintiff insists that the parties knew, when they made and accepted this offer, what their previous negotiations were, and, in the light of that knowledge, there was no uncertainty as to them, and that taking the parol testimony, the letters, maps, and exhibits, the meaning and intent of the parties may be ascertained, and the apparent uncertainty of the contract removed. But this action was brought, as appears by the complaint, to enforce a specific performance of a written contract. It cannot be aided by reading with it maps or other contemporaneous writings, as no reference is made to them in the instrument, and they therefore constitute no part of the contract. In *Wright* v. *Weeks*, 25 N. Y. 160, the court says: "If the agreement be vague and indefinite, so that the full intention of the parties cannot be collected from it, it cannot be said that the contract is in writing, and it is therefore void." If the parties have used abbreviations or technical terms, or terms of trade, evidence may be given by parol to show what meaning such terms and abbreviations acquired by usage and custom; but not in what sense the parties used

them, (citing authorities;) so an agreement need not be perfect in itself. It may be made certain and definite, and thus valid, under the statute, by reference to another writing, as well as by incorporating the entire contract in one paper. But reference must be made to another paper, and so distinct as to make that paper a part of the contract itself. The parties cannot unite two papers so as to make them unitedly constitute a valid contract, unless they are physicially joined, or the intention to unite them appears on the face of the papers. Nor can the parties import into this writing contemporaneous or previous parol negotiations or agreements, for the purpose of making the writing complete as a contract, except, as we have seen, to explain patent ambiguities apparent on the face of the paper. To do so would be to avoid the statute of frauds not only, but another equally well-settled principle of law,—that all such previous or contemporaneous negotiations are deemed merged in the writings.

There are other questions raised on this appeal, but we see no error committed by the referee that can affect this judgment, without determining whether the plaintiff may or may not have relief in some other form of action. We think this contract too vague, uncertain, and indefinite to be capable of having a specific performance decreed in equity. The judgment is affirmed, with costs.