(3 Misc. Rep. 421.)

BENNETT v. EGAN et al.

(Superior Court of New York City, General Term.    May 1, 1893.)

REAL-ESTATE BROKERS—RIGHT TO COMMISSIONS.

Plaintiff was employed by defendants to sell land, but the price of the land, and other terms, were not stipulated. Plaintiff procured a purchaser, who agreed, in writing, to buy the land for $34,650, paying $50 "to bind contract, which is to be executed at" a certain place; part of the price to be then paid in cash, and the balance "in purchase-money mortgage." Subsequently defendants and the purchaser failed to agree on the terms of the mortgage, and the sale was not consummated. _Held_ that, since the payment of $50 was no part of the purchase price, the contract was a mere option, and not an enforceable contract, and that plaintiff was therefore not entitled to commissions.

Exceptions from jury term.

Action by Jesse C. Bennett against John J. Egan and Daniel Hallecy to recover commissions.    A verdict was directed for plaintiff, and defendants' exceptions were ordered to be heard at general term in the first instance.    Exceptions sustained.

Argued before SEDGWICK, C. J., and FREEDMAN and Mc-ADAM, JJ.

T. E. Rochfort, for plaintiff.
E. Whitlock, for defendants.

FREEDMAN, J.    At the close of the whole case, both parties moved for the direction of a verdict.    Neither requested that any question of fact be submitted to the jury.    On the argument before us the counsel for the defendants conceded that the question to be determined is one of law.    The substantial question, therefore, is whether, upon the evidence, the verdict should have been directed,

as matter of law, in favor of the defendants, instead of the plaintiff. The action is brought by the plaintiff, a real-estate broker, to recover the amount of commissions alleged to be due to him from the defendants for services rendered to the defendants, and at their request. There is no dispute about the employment of the plaintiff as a broker, and it is conceded that he rendered some services, and that, if entitled to recover at all, he is entitled to a commission of 1 per cent. upon the purchase price; but the defendants deny that the plaintiff did all he was bound to do, and that he brought about an enforceable contract.

In employing a broker to sell real estate, the vendor's liability for the broker's services depends upon his contract with the broker, which may be express or implied. In the case of an express and special contract, the broker, in order to recover his commission from the vendor, must establish that he performed the special contract in every particular, by producing to the vendor a party able and ready and willing to take the property upon the precise terms prescribed by the vendor. In the absence of an express contract the implication, usually, is that the broker becomes entitled to the usual commissions whenever he brings to the vendor a party who is able and ready and willing to take the property upon the terms then named by the vendor, although the particulars may be arranged between vendor and vendee directly; but in every case the broker's services must result in a complete meeting of the minds of both vendor and vendee, for the duty he undertakes, the obligation he assumes, as a condition of his right to demand commissions, is to bring the vendor and vendee to an agreement. Sibbald v. Iron Co., 83 N. Y. 381; Alden v. Earle, 121 N. Y. 688, 24 N. E. Rep. 705, affirming 4 N. Y. Supp. 548. Whenever the broker's services have resulted in such a complete meeting of the minds of both vendor and vendee, he is, in the absence of an express stipulation to the contrary, entitled to the compensation agreed upon, or to the usual commission, although the vendor changes his mind, and refuses to enter into a written contract. In such a case the vendor cannot, by his own wrongful act, deprive the broker of his commission. On the other hand, as long as the vendor insists upon something which he has a right to insist upon as a condition of sale, and to which the vendee refuses to assent, in consequence of which disagreement the vendee refuses to enter into an enforceable contract, it cannot be held that the broker procured a complete meeting of the minds of both vendor and vendee. This proposition is self-evident. In Platt v. Kohler, 65 Hun, 557, 20 N. Y. Supp. 547, it was expressly held that where the vendor stands ready to perform, and to enter into a contract, on conditions he has authorized, the broker's right to commissions depends upon his procuring a person ready and willing to contract in such a way as to be legally bound to perform. To the same effect is Crombie v. Waldo, (N. Y. App.) 32 N. E. Rep. 1042. Now, the case at bar is not one where the broker, having been given definite terms on which to sell, produces a buyer able and willing and ready to comply with such terms. It is a case of implied contract. Before the defendants came to plaintiff's office on the day the paper was

signed which will be presently considered, the defendants had not agreed to take $34,650. They only agreed to take that sum after much talking and bargaining had taken place, whereupon the plaintiff prepared the following paper, upon which he rests his right to recover, and which he induced the vendors and the vendee to sign, viz.:

"New York, Nov. 10th, 1890.

"We, J. J. Egan and D. Hallecy, do hereby agree to sell the 5-story flat situated on the S. W. corner of West End avenue and Seventy-Eighth street to Henry Rothmann; and I, Henry Rothmann, hereby do agree to purchase the above-described premises at the purchase price of ($34,650) thirty-four thousand six hundred and fifty dollars, and pay in hand to J. J. Egan & D. Hallecy 50 dollars, the receipt of which is hereby acknowledged, to bind contract, which is to be executed at the office of E. Whitlock, 291 Broadway, New York city, and upon payment of 1,000 dollars, and the balance according to contract, as follows: 8,650 dollars in cash, and 25,000 dollars in purchase-money mortgage. Property is to be delivered free and clear of all claim or claims up to the day taking title, except street assessments.

| | |
|---|---:|
| On contract ................................................. | $ 1,000 |
| For deed .................................................... | 8,650 |
| Mortgage .................................................... | 25,000 |
| | $34,650 |

[Signed]                                     "J. J. Egan.
                                             "Daniel Hallecy.
                                             "Henry Rothmann."

The said Rothmann, as vendee, and the defendants, as vendors, had no personal understanding with each other in the matter, except as expressed in the said written instrument, the bargaining having been carried on through the plaintiff as broker. Subsequently Rothmann and the defendant Egan met at the place specified in the written instrument to enter into a formal contract, and were unable to agree upon the terms of the mortgage, and thereupon Rothmann refused to enter into any further contract, and the negotiations were broken off, and were never resumed. The question, therefore, arises, whether the said written instrument, of itself, was or was not an enforceable contract for the sale and purchase of the real estate therein referred to. After much research and reflection, I have come to the conclusion that it was not a contract upon which the vendors could rest an action to compel the vendee to perform, but was merely—at least, so far as the vendee was concerned—an agreement that he would thereafter execute a contract to purchase, or forfeit the $50 paid as liquidated damages. In other words the vendors gave to the vendee an option, good until the meeting at which the contract was to be executed, for which option the vendee paid $50. At most, it was a contract for a contract; for the whole instrument must be read together, in which case the opening words relating to buying and selling are clearly qualified by "pay in hand * * * $50.00 to bind contract which is to be executed," and because the $50 paid formed no part of the consideration of $34,650 to be paid for the property, for the whole of that sum was otherwise provided for. In this respect the case is just the reverse of Simonson v. Kissick, 4 Daly, 143, in which $75 had been paid on account of, and as part of, the purchase price.

So the paper itself, without the aid of other evidence, does not constitute a contract enforceable against the vendee, because it is too indefinite in terms. Passing over such matters as character of deed and time of closing, and considering only the question of the $25,000 mortgage, which was to be a purchase-money mortgage, a question at once arises as to its terms. Should it run one, two, three, or how many, years? What rate of interest should it bear, and how payable,—quarterly, semiannually, annually, or at the end of the term? Should it contain clauses making principal payable on default in interest or taxes? But why particularize further? Until the parties had agreed on these details, of great importance to both sides, it would be impossible to draw such mortgage. No court would have jurisdiction to determine it for them, for it is idle to contend that a mortgage payable on demand could be substituted as a matter of law. The cases to which the learned counsel for the plaintiff has called attention are clearly distinguishable. Westervelt v. Matheson, Hoff. Ch. 37, and Bostwick v. Beach, 103 N. Y. 414, 9 N. E. Rep. 41, were cases in which the contract was sufficiently definite against the vendor, and the vendee elected to take title, and to have incumbrances removed out of the purchase money. Dieter v. Fallon, (Sup.) 12 N. Y. Supp. 33, turned upon its own facts, which were complicated; and it was held that it sufficiently appeared what mortgages were, as matter of fact, intended by the parties. In Beebe v. Ranger, 35 N. Y. Super. Ct. 452, the broker had fully performed all he was employed to accomplish, and rne sale fell through because the vendor wrongfully persisted in inserting in the contract a forfeiture clause to which the vendee declined to accede. It was in view of the fact that the sale fell through solely in consequence of the vendor's fault that it was held that the fact that the interest, insurance clause, and the time for the payment of the mortgage had not been arranged before the day the contract was to be signed did not deprive the broker of his commission. No case has, therefore, been cited, which is in conflict with the views expressed by me.

The defendants' case becomes still stronger when the circumstances surrounding the execution of the written instrument, and the reasons for the refusal of the vendee to execute a further contract, are considered. Aside from the claim of the defendants that they told plaintiff that they would sign no contract outside of Whitlock's office, which is denied by the plaintiff, the preponderance of evidence given at the trial is to the effect (1) that the plaintiff, who drew the written instrument himself, in order to secure, if possible, his commissions, procured the signature of the vendee to it upon the representation that the mortgage of $25,000 was to run for five years, although neither of the defendants had authorized him so to do, or had ever told him so, and although there was already on the property a mortgage for that amount, having about a year to run; (2) that, although nothing whatever was said by either of the parties concerning the terms of the mortgage, the plaintiff made the written instrument provide for a purchase money mortgage,—a provision which the defendants did not intend to

make, and which the vendee did not understand; and (3) that the vendee, at Whitlock's office, refused to enter into a formal contract for the sole reason that the mortgage could not be made to run for five years, as had been represented by the plaintiff.

Upon the whole case, it therefore fully appears that the plaintiff, as broker, never procured a complete meeting of the minds of both vendors and vendee, either in writing or by parol, or part one and part the other, and that, consequently, he had never earned his commission. That being so, and both parties having moved for the direction of a verdict, the verdict should have been directed for the defendants. The exceptions taken by the defendants should be sustained, the verdict set aside, and a new trial ordered, with costs to the defendants, to abide the event. All concur.