BYRNE v. KORN.

(Supreme Court, Appellate Term. December 13, 1898.)

BROKERS—RIGHT TO COMMISSION—MORTGAGES.
    An owner employed a broker to find a purchaser for realty, agreeing to make a builder's loan to the purchaser. The broker found a purchaser, who agreed with the owner as to the price, the amount of the loan, and the rate of interest, but the purchaser afterwards refused to accept a deed, because the mortgage contained the usual clause assigning the rents of the building to be erected, as additional security for the loan. *Held,* that the broker could not recover commissions.

Appeal from municipal court, borough of Manhattan, First district.
Action by Henry Byrne against Henry Korn. There was a judgment for plaintiff, from which defendant appeals. Reversed.
Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Samuel Greenbaum, for appellant.
Nathaniel Cohen, for respondent.

GIEGERICH, J. The sole question presented by this appeal is whether the judgment is supported by the evidence. Unfortunately, because of the unintelligible character of the testimony given by the plaintiff's assignor, one Harris Serhansky, it is impossible to arrive at a satisfactory conclusion as to either the nature of the agreement under which he was employed, or the manner of its performance. All that

can be clearly elicited therefrom is the fact that the defendant in or about March or April, 1898, told him that he was willing to sell the three lots situated on the easterly side of Mott avenue, north of 144th street, in the city of New York, for $18,000, and make a builder's loan thereon for $33,000, and that in consequence thereof he, in either of said months, caused two prospective purchasers, in the persons of Antonio Verderosa and Vincenzo Poppiti, to be present at the law offices of Abraham Cohen, their counsel, where they met the defendant and his counsel, Samson H. Schwarz. The transactions which there took place are detailed with more particularity, however, by the other persons present, who, when called as witnesses, corroborated one another to the effect that Verderosa and Poppiti agreed to purchase the property for $18,000; that the defendant promised to make a builder's loan of $33,000 thereon ($11,000 on each lot), payment of which was to be secured by a mortgage to become due in one year, and bearing interest at the rate of 6 per cent. per annum; that, to secure the former's agreement to finish the houses to be erected upon said lots within the stipulated time, they were to give a mortgage for $1,500 upon the premises known as No. 335 East 109th street, in said city, provided the incumbrances thereon did not exceed $14,500; that defendant's counsel was to notify Mr. Cohen when the parties were to meet for the purpose of executing the contract; and that the sum of $50 was to be deposited with the defendant to reimburse him for any expenses attendant upon the examination of title to the premises, but which was, however, to be returned in the event of the mortgage thereon not exceeding the sum mentioned. Mr. Cohen testified that he wrote down upon a slip of paper the terms thus concluded, and delivered it to the defendant, whose attorney was "to put it in legal phraseology." Mr. Schwarz' testimony, on the other hand, was that:

"Some of the terms of the agreement were discussed, and, among other things, the price of lots, and how much of a loan was to be made; and finally it was decided that the rest of the terms, and the whole building-loan contract, with the bonds and mortgages and surety bond, were to be delivered up by me, and submitted to them for approval at my office."

Subsequently, and on the 18th day of April of the present year, the parties and their attorneys met at the office of the defendant's counsel to hear read the formal contract which had been prepared by Mr. Schwarz; and one of the provisos therein being that the bonds and mortgages upon the lots so sold, which were to be executed simultaneously with the agreement's execution, should contain "the usual insurance, fifteen days' interest, ninety days' taxes, assessments and water rent, and receiver's clauses, together with a clause assigning the rents as a further security," Mr. Cohen objected to the latter provisions, and declined to have his clients affix their signatures to the papers as thus presented. Thereupon Mr. Schwarz stated that the objectionable clause would be eliminated, if one Newman Cowen, whom he would consult, thought it advisable, and while Verderosa signed the proffered contract upon that understanding, neither his wife, nor Poppiti or his wife, would lend their sanction thereto. Mr. Schwarz thereafter called upon Mr. Cohen, and, as the latter says, brought with him releases and

an agreement, for execution by each of the parties. In this connection Mr. Cohen's testimony reads:

"Q. Aside from that, didn't Mr. Schwarz say the parties had decided to accept the contract with the modifications? A. No; Mr. Schwarz didn't say that. After I sued Mr. Korn, he told me; it might have been the time we settled the case about the $50 deposit. I don't believe he told me before that. Q. Didn't you see Mr. Schwarz two or three days after that first conversation you had, in which he said finally they would let it go through that way? A. No; that was after they were served with summons for $245 for my clients."

The defendant's own testimony is substantially to the effect that, on the evening of the day the parties met at his counsel's office, he concluded to have the transaction go through without the clause objected to, and requested his counsel to inform the purchasers to that effect; and in this he is supported by the testimony of Mr. Schwarz, wherein he claims to have informed Poppiti that such clause could be stricken out, but that neither the latter nor Verderosa ever resumed the negotiations, or expressed to the defendant or his counsel a willingness to execute the papers.

The principles enunciated in Bennett v. Egan, 3 Misc. Rep. 421, 23 N. Y. Supp. 154, are peculiarly applicable to the case at bar. There Freedman, J., delivering the opinion of the court, said:

"In employing a broker to sell real estate, the vendor's liability for the broker's services depends upon his contract with the broker, which may be express or implied. In the case of an express and special contract, the broker, in order to recover his commission from the vendor, must establish that he performed the special contract in every particular, by producing to the vendor a party able and ready and willing to take the property upon the precise terms prescribed by the vendor. In the absence of an express contract, the implication usually is that the broker becomes entitled to the usual commissions whenever he brings to the vendor a party who is able and ready and willing to take the property upon the terms then named by the vendor, although the particulars may be arranged between vendor and vendee directly. But in every case the broker's services must result in a complete meeting of the minds of both vendor and vendee; for the duty he undertakes, the obligation he assumes, as a condition of his right to demand commissions, is to bring the vendor and vendee to an agreement. Sibbald v. Iron Co., 83 N. Y. 381; Alden v. Earle, 121 N. Y. 688, 24 N. E. 705, affirming 56 N. Y. Super. Ct. 366, 4 N. Y. Supp. 548. Whenever the broker's services have resulted in such a complete meeting of the minds of both vendor and vendee, he is, in the absence of an express stipulation to the contrary, entitled to the compensation agreed upon, or to the usual commission, although the vendor changes his mind, and refuses to enter into a written contract. In such a case the vendor cannot by his own wrongful act deprive the broker of his commission. On the other hand, as long as the vendor insists upon something which he has a right to insist upon as a condition of sale, and to which the vendee refuses to assent, in consequence of which disagreement the vendee refuses to enter into an enforceable contract, it cannot be held that the broker procured a complete meeting of the minds of both vendor and vendee. This proposition is self-evident. In Platt v. Kohler, 65 Hun, 557, 20 N. Y. Supp. 547, it was expressly held that, where the vendor stands ready to perform and to enter into a contract on conditions he has authorized, the broker's right to commissions depends upon his procuring a person ready and willing to contract in such a way as to be legally bound to perform. To the same effect is Crombie v. Waldo (N. Y. App.) 32 N. E. 1042."

Testing the evidence in the light of the foregoing rules, it is obvious that the contract for the services of the plaintiff's assignor was at least

an implied one.  If I am right in this, the question arises whether the latter produced a party able, ready, and willing to take the property upon the terms named by the defendant when the parties met.  As above stated, the persons brought by the plaintiff's assignor refused to sign the proposed contract, bonds, and mortgages, and accept a deed of the real property above described, because of the provision contained in the contract to the effect that the rents of the houses to be erected upon said lots should be assigned as further security for the repayment of the moneys to be advanced by the defendant.  The parties had at the preliminary meeting agreed upon certain conditions, viz. the price to be paid for the lots, the amount of the builder's loan, the date of its repayment, the rate of interest, and the amount of the additional security to be given by way of mortgage upon the prospective purchasers' real property in East 109th street; but the minor details with respect to the insertion of the clauses usually contained in bonds and mortgages executed in transactions of a similar character do not appear to have been discussed, and were, therefore, left open for settlement after the contract was drawn up.  The defendant was entitled to have embodied in the bonds and mortgages a clause that would protect him from the loss of moneys to be advanced to the proposed purchasers, who were to take the title to the lots in question without paying any portion of the purchase money.  Under the circumstances, the details of the contract in these respects were matters of substance, and the defendant was entitled to insist upon them as a condition of the sale.  Besides, according to the uncontradicted testimony adduced in behalf of the defendant, the form of the clause objected to was universally adopted and in general use in all cases where an agreement existed on the part of the vendor to make a builder's loan.  The fact of the prospective purchasers' refusal to sign a contract providing for such a clause in the bonds and mortgages makes it manifestly clear that the plaintiff's assignor never procured a complete meeting of the minds of the parties interested, either in writing or orally, and hence the commissions sued for were never earned.  The case of Beebe v. Ranger, 35 N. Y. Super. Ct. 452, is entirely inapplicable here, for the reason that there the broker was employed to sell certain real estate for a specified sum; the vendor promising to make the terms easy, or on a basis of about one-third cash.  The intended buyer agreed to take the lots upon the terms so fixed, and appointed to meet the vendor for the purpose of signing the contract; but subsequently, when the parties did meet, and while the contract was being drawn up, the seller suggested that a clause be inserted providing for the purchaser's forfeiture of the amount deposited in case he failed to perform his contract within 30 days, and, this clause being objected to by the purchaser, the sale fell through.  All the other provisions of the contract were unobjectionable, and apparently the intending purchaser would have executed it, had this certain clause not been insisted upon.  In fact, the latter testified that he was ready and prepared to carry out the proposition he had made.  Nothing had previously been said with respect to the incorporation in the contract of a clause providing for the forfeiture of $3,750 in case the sale should fall through; nor had the subject been broached until the con-

tract of sale was being drawn up, and after the propositions submitted by the intended purchaser had been assented to. Curtis, J., sums up the situation, in part, at page 456, as follows:

"From the willingness of the purchaser to complete the contract in case the forfeiture clause was not insisted on, and his finding the contract satisfactory in all other respects, there is not much force in the seller's objection that their minds had not met on the interest and incumbrance clauses, or the kind of mortgage to be given. These minor details the purchaser appeared to have left to the seller to arrange as he might consider satisfactory, in accordance with the provision of the original verbal agreement, that the seller would make the terms easy. Their minds met in allowing the seller, in all these details, to draw the contract to suit himself."

In the present case the situation is different. The arrangement of the details was not, as there, left to the defendant, but was shared in by both parties. Even had the defendant been so authorized, he obviously would not have been vested with the right to insist upon the insertion of such a clause as a condition of sale. Such being the case, no contract could, in either aspect, be consummated without the consent of the prospective purchasers; and, they having declined to acquiesce therein, it is clear that the broker did not bring the minds of the parties to an agreement.

Aside from these considerations, it also appears from the testimony of Mr. Schwarz that subsequent to the meeting of the parties at his office, and after a conference with Mr. Newman Cowen and the defendant, he called at the place of business of the intended vendees, and, in the absence of Mr. Verderosa, informed Mr. Poppiti that the defendant was willing to eliminate from the contract the objectionable clause; and in this he is partly corroborated by Mr. Verderosa, who admits having been apprised by Poppiti of Schwarz' call at the house. Poppiti, however, was not called as a witness. It thus appears from the uncontradicted testimony of Mr. Schwarz that the prospective purchasers produced by the plaintiff's assignor were not ready and willing to take the property and to sign the contract, even after elimination therefrom of the clause in question.

As the logical sequence resultant from the foregoing facts, I am satisfied that the judgment is contrary to the evidence, and, consequently, that it should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.