Where the record recites that the jury rendered a verdict for plaintiff and against defendant, it is not impeached by a statement, found in the case and exceptions, that the clerk received it in the absence of the court.

2. VERDICT—RECEPTION—IRREGULARITY.

    Where there is an irregularity in the reception of a verdict for plaintiff, defendant's remedy is by motion to set it aside.

Appeal from trial term.

Action by William T. Smith and another against George D. Ferguson & Co. From a judgment entered on a verdict in favor of plaintiffs, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Roger M. Sherman, for appellants.

Percival C. Smith, for respondents.

PER CURIAM. The only attack made by the appellants on this judgment is that, by the consent of the parties, the clerk received the verdict of the jury in the absence of the court. It is insisted that a verdict so received, even by consent, is a nullity. It is not necessary to express our opinion on this question, nor is it to be surmised that we regard the objection as well taken. In our opinion, the question is not presented to us. The record recites that the jury rendered a verdict for the plaintiffs and against the defendants; and the record cannot be considered as impeached by a statement, found in the case and exceptions, that the clerk received the verdict of the jury. No motion was made for a new trial. We think the defendants' remedy was by motion to set aside the verdict. But, conceding that the irregularity of which the defendants complain can be considered on an appeal from the judgment, it is necessary that the record should show that the irregularity exists. If the record is erroneous, the appellants should have moved to correct it; but, until corrected, the record is conclusive to the effect that the verdict was properly rendered, and cannot be impeached collaterally.

The judgment appealed from should be affirmed, with costs.

---

## C. H. DIAMOND & CO. v. HARTLEY.

(Supreme Court, Appellate Division, Second Department. February 7, 1899.)

REAL-ESTATE BROKERS—COMMISSIONS—EVIDENCE.

    A broker earns no commissions for procuring a person agreeing to pay defendant's price for his lot, where such person refuses to consummate the purchase after learning that the lot was a few inches narrower than they all supposed it was, and defendant refuses to make a proportionate deduction on account of the shortage.

Appeal from trial term, New York county.

Action by C. H. Diamond & Co. against Marcellus Hartley for commissions for negotiating a sale of land. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Transferred from First to Second department. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Paul D. Cravath, for appellant.
William C. Breed (Henry M. Abbott, on the brief), for respondent.

WOODWARD, J. The plaintiff in this action is a broker, engaged in real-estate transactions. One Cutner, an employé of the plaintiff, knowing that Messrs. Stern & Co. were desirous of purchasing a building in a certain location in New York, went to the defendant, and asked if his house was for sale, and, if so, at what price. The defendant replied, in substance, that, while the property was not for sale, he would consider an offer. Subsequently he offered to accept $82,000 for the house, provided the transaction was closed on that day, November 12, 1896. While there was an understanding that the contract should be closed on that day, the purchaser did not appear. The negotiation was afterwards resumed, and on the 16th day of November Mr. Cutner, accompanied by Messrs. Stern, Marks, and their counsel, Mr. Amend, met in the office of the defendant, who had, in the meantime, caused a contract to be drawn up for the sale of the property. Mr. Hartley, the defendant, was present but a short time, leaving the matter to be arranged by his assistant, Mr. Dally. The proposed contract was submitted to Messrs. Stern and Marks, who handed the same over to their lawyer, who pronounced it satisfactory. Then Mr. Stern asked that a clause be inserted whereby the purchaser should have the option of allowing $45,000 of the purchase price to remain on mortgage for one year at 5 per cent. It was in evidence that Mr. Dally consented to the insertion of this clause, though it was disputed by him, and he also swore that he had no authority from Mr. Hartley to vary the terms of sale as set forth in the contract, and this was not further disputed. At this point the attorney for the proposed purchasers discovered in the abstract of title that the property, instead of being 25 feet front, as described by the broker, and by the description contained in the contract, was in fact only 24 feet 7½ inches wide. It is not pretended that there was any fraud involved. The deed to the defendant described the property as having a frontage of 25 feet, and the maps of the city also showed the same frontage. Upon the discovery of this defect in the title, Mr. Dally took the contract, and said he would have it altered so that it should describe the property as 24 feet 7½ inches wide. Mr. Marks said that the purchasers should have a proportionate reduction on account of the shortage of 4½ inches. Mr. Dally refused to make any reduction in the price, and, after arranging for another meeting about one week later, the meeting broke up. On the afternoon of that day a bill

was sent to Mr. Hartley, demanding $820 commission on the sale. Some further negotiations occurred between Messrs. Stern and Marks and the defendant, resulting in a refusal of Messrs. Stern and Marks to take the property at $82,000, and the refusal of the defendant to take less. At the trial the defendant moved, at the close of the plaintiff's case, for a dismissal of the complaint. This motion was denied, and an exception taken. At the close of the entire case the defendant moved for a verdict by direction. This motion was also denied, and an exception taken.

The plaintiff, to be entitled to recover in this action, was called upon to show that it had brought to the defendant a party who was able and willing to take the property at the defendant's terms. The defendant was the owner of a piece of property known as "No. 17 West Thirtieth Street," and this property was described in the deed to the defendant as having a frontage of 25 feet on West Thirtieth street. He was not seeking to sell this property. He made no representations for the purpose of inducing a sale, so far as appears from the record, and no suggestion of the kind is made. He simply said that, if the proposed purchasers wanted the particular piece of property of which he was possessed, they might have it for $82,-000; and he caused his attorney, after negotiations, to draw a contract for the sale of such property. He gave no one any authority to change the terms of the proposed contract, nor did he undertake to sell anything more than the premises on West Thirtieth street, "being the premises now known as 'No. 17 West Thirtieth Street.'" The question of whether these premises were correctly described, in the absence of any fraudulent representations, has no bearing upon the question presented in this case. The plaintiff, under an implied contract, undertook to sell the property of the defendant, for which it was to receive a commission, and "the fundamental and correct doctrine is that the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made; and until that is done his right to commissions does not accrue." Sibbald v. Iron Co., 83 N. Y. 378, 382, citing authorities. "This, however," continue the court, "must be taken with one important and necessary limitation: If the efforts of the broker are rendered a failure by the fault of the employer; if capriciously he changes his mind, after the purchaser, ready and willing, and consenting to the prescribed terms, is produced; or if the latter declines to complete the contract because of some defect of title in the ownership of the seller, some unremoved incumbrance, some defect which is the fault of the latter,—then the broker does not lose his commissions." There is no evidence in this case that the defendant has not been ready at all times to comply with his agreement to take $82,000 for the premises which he owned, or that the proposed purchasers were ready, able, and willing to pay him the amount under the terms and conditions which he imposed, which terms were neither capricious nor unreasonable. The question is presented in exactly the same light as though the property was correctly described, for it consists of all the premises known as "No. 17 West Thirtieth Street"; and the mere fact that

some one has made a mistake of 4½ inches in the dimensions of the lot does not affect the contract between the parties to this action, which was that the plaintiff should "bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made"; and this it has failed to do through no fault of the employer. If the proposed purchasers and the defendant had entered into a contract, if they had come to an agreement as to price and terms for this particular piece of property, and then the proposed purchasers refused to carry out their part of the contract because of any defect in the title of the premises, the plaintiff would be entitled to recover, because it would have carried out its part of the contract. Gilder v. Davis, 137 N. Y. 504, 33 N. E. 599. But no such state of facts is shown. On the contrary, there is an entire absence of evidence of the parties to the transaction ever reaching an agreement which in any manner bound them. As was said in the case of Platt v. Kohler, 65 Hun, 557, 559, 20 N. Y. Supp. 547:

"The plaintiff's right to payment depended upon his procuring a person ready and willing to contract in such a way as to be legally bound to perform. His service was incomplete until that was done. Nothing was accomplished of any benefit to the defendant, who could not compel Mergenthaler to perform, nor recover damages for nonperformance; and nothing of subsequent occurrence changed the relations between the parties."

Again, the court say:

"But where the principal stands ready to perform, to enter into a contract on conditions he has authorized, and the party produced by the broker refuses to conform thereto by entering into a binding obligation, the broker has failed to effect the purpose of his employment. He has not found a person ready and willing to take on the agreed terms, and his principal is not liable for commissions."

This case is cited with approval in the case of Feiner v. Kobre, 13 Misc. Rep. 499, 34 N. Y. Supp. 676, where the facts are in many respects analogous to those of the case at bar; and in Bennett v. Egan, 3 Misc. Rep. 421, 23 N. Y. Supp. 154, where the parties had entered into a written agreement to sell and to purchase, and had paid $50 to bind the bargain, but the court held that the plaintiff was not entitled to commission, because the contract between the parties was not one which bound the vendee. See, Kalley v. Baker, 132 N. Y. 1, 29 N. E. 1091; Gilder v. Davis, 137 N. Y. 504, 33 N. E. 599; Curtiss v. Mott, 90 Hun, 439, 35 N. Y. Supp. 983. The law of this case seems to be well settled. The plaintiff must be able to establish that it has produced a party able and willing to take the property offered by the defendant at the defendant's own terms, and to do this it must show that the parties to the transaction have reached an enforceable agreement as between themselves. The defendant authorized the plaintiff to sell a certain piece of property at a given price. The plaintiff has failed to produce a party who is willing and able to take this property upon the terms prescribed by the defendant, and it has not earned the commission which it seeks to recover.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.