[No. 14622. In Bank.—December 30, 1893.]

ROBERT B. OULLAHAN ET AL., APPELLANTS, v.
FRANK T. BALDWIN ET AL., RESPONDENTS.

REAL ESTATE BROKERS—RIGHT TO COMMISSIONS.—The contract of real estate brokers appointed sole agents to negotiate a sale during a limited period, is completed and their commissions earned when they produce a purchaser ready, willing, and able to purchase upon the terms stated in the contract, within the time limited.

ID.—CHECK FOR FIRST PAYMENT—TENDER—WAIVER.—The fact that on a day previous to the expiration of the time limited the purchaser obtained by the brokers offered his check to the vendor for the first payment of the purchase money, and that such check was declined as not equivalent to the money, is immaterial, where it appears that on the subsequent day, and before the expiration of the time limited, he attempted to pay the cash to the vendor, but was prevented by failure to secure a personal audience with the vendor, who waived the tender by eluding it, and selling the land on that day to another purchaser.

ID.—OFFER OF BROKERS TO WAIVE CLAIMS UNDER CONTRACT—CONSIDERATION—FULFILLMENT OF CONDITIONS—SATISFACTION OF VENDORS.—A voluntary offer of the brokers, without consideration, to waive all claims under their contract, if they could not satisfy the vendors at a time previous to the time limited by the contract, that they would make a sale, accompanied by a statement that they could not release them from the contract, does not operate as a waiver, ipso facto, upon failure of the condition, or alter the rights of the parties under the contract, there being no element of estoppel in the case; and where at such time evidence was adduced sufficient to convince a fair man of ordinary understanding, who was honestly willing to be convinced, that the brokers had fulfilled their self-imposed conditions, it must be held that the vendor was so convinced.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Louttit, Woods & Levinsky, Carter & Smith,* and *Mich. Mullany,* for Appellants.

The plaintiffs having actually produced a purchaser, with the check for payment, they were entitled to their commissions. The failure of the defendants to then deal with the purchaser so found by plaintiffs cannot impair the plaintiffs' right to recover the commission thus earned by them. (*Phelan* v. *Gardner,* 43 Cal., 310;

*Gonzales* v. *Broad*, 57 Cal. 225; *Kock* v. *Emmerling*, 22 How. 69; *Magill* v. *Stoddard*, 70 Wis. 75; *Cook* v. *Kroemeke*, 4 Daly (N. Y.), 268; *Buckingham* v. *Harris*, 10 Col. 455; *Cassady* v. *Seeley*, 69 Iowa, 509; *Goss* v. *Stevens*, 32 Minn. 472; *Phelps* v. *Prusch*, 83 Cal. 627.)   The failure of defendants to carry out the transaction with the purchaser furnished by plaintiffs forms no impediment to plaintiffs' right to demand and recover their compensation for having found a purchaser.   (*Hamlin* v. *Schulte*, 34 Minn. 534; *Parker* v. *Walker*, 86 Tenn. 566; *Gonzales* v. *Broad*, 57 Cal. 224; *Dolan* v. *Scanlan*, 57 Cal. 266.) Although the plaintiffs had all of the twenty-second day of September, 1887, within which to demand for their purchaser, from the defendants, a contract of sale, and within which to offer to pay the first installment of the purchase price, plaintiffs' whole duty was performed at or before 10:30 A. M. of that day, when the defendants had sold the land to others.   But the act of defendants' in this behalf did not impair plaintiffs' right to their commissions.   (*Ketchum* v. *Zeilsdorff*, 26 Wis. 516; *United States* v. *Peck*, 102 U. S. 64; *Kingsley* v. *Brooklyn*, 78 N. Y. 200–02; *Hawley* v. *Smith*, 45 Ind. 183; *Belden* v. *Woodmansee*, 81 Ill. 25; Benjamin on Sales, 5th Am. ed. 743; *Wolf* v. *Marsh*, 54 Cal. 232; *Houghton* v. *Steele*, 58 Cal. 421.)   Assuming that it was the duty of the brokers to pay or offer to pay the $10,000 on September 22d, the plaintiffs are entitled to recover, as a sufficient tender was made.   (Civ. Code, secs. 1496, 1501; *Mathis* v. *Thomas*, 101 Ind. 119; see *People* v. *Stockton etc. R. R. Co.*, 45 Cal. 313, 314; 13 Am. Rep. 178.)   Conceding that no sufficient tender was made, still a tender was excused because of the action of defendants.   (Civ. Code, sec. 1511; *Smith* v. *Smith*, 25 Wend. 405; *Howard* v. *Holbrook*, 9 Bosw. 237: *Tasker* v. *Bartlett*, 5 Cush. 359; *Moynahan* v. *Moore*, 77 Am. Dec. 472, and note; *Southworth* v. *Smith*, 7 Cush. 391; *Knapp* v. *Wallace*, 41 N. Y. 477; *McClave* v. *Paine*, 49 N. Y. 561; 10 Am. Rep. 431; Waterman on Specific Performance, secs. 439, 446; *Hall* v. *Whittier*, 10 R. I. 530; Pomeroy on Contracts, secs.

326, 360–63.) The only thing the broker had to tender or produce was a buyer, ready, willing and able to buy; all of which the plaintiffs did in this case. The plaintiffs did much more in this case than was necessary for them to do, as brokers, in order to entitle them to recover their commissions. (*Barnard* v. *Monnot*, 3 Keyes, 203; *McGavock* v. *Woodlief*, 20 How. U. S. 221; *Kock* v. *Emmerling*, 22 How. 69; *Phelps* v. *Prusch*, 83 Cal. 627; *Dolan* v. *Scanlan*, 57 Cal. 266; *Toomy* v. *Dunphy*, 86 Cal. 639; *Blumenthal* v. *Goodall*, 89 Cal. 251.)

*J. C. Campbell*, for Respondents.

The plaintiffs are not entitled to recover their commissions, as they failed to obtain a purchaser who would bind himself in writing to purchase the real estate. (Civ. Code, sec. 1741; Code Civ. Proc., sec. 1971; *Sharp* v. *Blankenship*, 67 Cal. 443; Pomeroy on Contracts, pp. 103, 104; *Stewart* v. *Murray*, 92 Ind. 545; 47 Am. Rep. 167; *McClave* v. *Paine*, 49 N. Y. 561; 10 Am. Rep. 431.) The check, even if it had been made payable to any of the respondents, would not have been a tender of any money, and would not have been sufficient, under the written power held by Gaman & Lyon. (*Beauchamp* v. *Archer*, 58 Cal. 431; 41 Am. Rep. 266; 2 Davies on Negotiable Instruments, 1623–26; *Heartt* v. *Rhodes*, 66 Ill. 351; *Blair* v. *Wilson*, 28 Gratt. 171; *Bickford* v. *First Nat. Bank*, 42 Ill. 238; 89 Am. Dec. 436; *Rounds* v. *Smith*, 42 Ill. 245; *Brown* v. *Leckie*, 43 Ill. 497; *Larsen* v. *Breene*, 12 Col. 480.) It was the duty of the purchaser to have the money there, and offer the money. (*Englander* v. *Rogers*, 41 Cal. 420; *Heine* v. *Treadwell*, 72 Cal. 220; *Strong* v. *Blake*, 46· Barb. 227; *Bakeman* v. *Pooler*, 15 Wend. 637; *Haxtun* v. *Bishop*, 3 Wend. 22.) A verbal agreement on the part of the proposed purchaser is not sufficient to entitle the broker to his commissions. (*Love* v. *Miller*, 53 Ind. 300; 21 Am. Rep. 192; *Drury* v. *Newman*, 99 Mass. 256; *Gilchrist* v. *Clarke*, 86 Tenn. 587; *Walker* v. *Tirrel*, 101 Mass. 258; 3 Am. Rep. 352; *Tombs* v. *Alexander*, 101 Mass. 256; 3 Am. Rep. 349; *Smith* v. *Tate*,

82 Va. 657.)    The plaintiffs did not consummate a sale
or an agreement for sale within the time limited by the
agreement, and cannot recover commissions. (*McCarthy*
v. *Cavers*, 66 Iowa, 343; *Watson* v. *Brooks*, 11 Or. 271.)
Appointing plaintiffs sole agents did not imply that the
owners could not sell the property themselves, but only
prohibited them from appointing any other agents.
(*Dole* v. *Sherwood*, 41 Minn. 535; 16 Am. St. Rep. 731;
*Golden Gate Packing Co.* v. *Farmers' Union*, 55 Cal. 606;
*Fairchild* v. *Rogers*, 32 Minn. 369.)

*Robert Y. Hayne*, also for Respondents.

GAROUTTE, J.—This is an action by real estate brokers
to recover commissions for negotiating a sale of a tract
of land situated near the city of Stockton.    The owners
thereof gave Gaman & Lyon, real estate brokers of San
Francisco, the following writing:

"STOCKTON, September 17, 1887.

"We, F. T. Baldwin, B. F. Langford, and John D.
McDougald, do hereby constitute and appoint Gaman &
Lyon, of 339 Kearny street, of San Francisco, our sole
agents for a period of five days from date hereof, to
negotiate a sale of our Stockton lands, consisting of
thirteen hundred and fourteen (1,314.35) and thirty-five
hundredths acres, and known as 'Stockton Gardens.'
Our price for said land is one hundred and sixteen
thousand six hundred and sixty-six (116,666.65) and
sixty-five hundredths dollars net to us, . . . . and any
amount over and above said sum for which our said
agents may sell said land we agree to give them for com-
missions for their services.    Terms of payment shall be
$10,000 within the five days, $5,000 additional on con-
firmation of title. . . . . Complete abstract of title to be
furnished and ten days allowed for examination."

The brokers had in view one C. D. Barrows as pros-
pective purchaser, and were expecting him to appear
upon the scene at any moment for the purpose of view-
ing the land.    After the owners had placed the property

in the hands of Gaman & Lyon under the aforesaid agreement, they ascertained that certain parties residing in San Jose were desirous of purchasing, whereupon they stated to the brokers their fears that the prospective buyer, Barrows, would fail to purchase, and that prior to the expiration of the life of the contract the San Jose parties would undergo a change of mind, and thus no sale be consummated to any one, and they thereupon requested said brokers to release them from the contract. In answer to such request Gaman & Lyon sent them the following letter:

"STOCKTON, CAL., September 20, 1887.

" *Messrs Baldwin, Langford, and McDougald,*

" SIRS: You have requested us to release you from the contract which we hold on your tract of land near Stockton, known as the ' Stockton Gardens.' Replying, we beg to say that, under the circumstances, and in view of the amount of labor we have performed, we cannot, in justice to ourselves, release you from said contract, but we will concede that unless we can convince you by Thursday morning, at eight o'clock, that we will make a sale, we will then waive all claims under said contract.        Respectfully yours,

"GAMAN & LYON."

Baldwin gave his power of attorney to Langford and McDougald to act for him in the premises, and was not in the city on Thursday, the 22d. Langford was not in Stockton upon that day, and hence McDougald alone, aside from their attorney, represented the owners in the transaction. Thursday morning, September 22d, at seven o'clock, Lyon informed McDougald that Barrows was present and ready to take the land upon the terms stated in the contract, whereupon McDougald requested them to meet him at Judge Budd's law office at eight o'clock, for the purpose of completing the trade. The parties met at that time, and Barrows offered himself as a purchaser, and tendered his personal check for ten thousand dollars as the first payment under the con-

tract. This check was declined, as not the equivalent
for the money, whereupon McDougald was informed
that the money would be produced for him upon the
opening of the bank, and McDougald then stated that he
would allow them until 9:30 o'clock of that morning to
produce the money, and if not present with it at that
time he would close the trade with other parties. There-
upon Lyon and Barrows withdrew, and McDougald sold
the land to the San Jose parties at ten o'clock at a largely
increased price. Lyon drew the money from the bank
at ten o'clock, and passed the remainder of the day in
an effort to tender it to McDougald as the first payment
upon the purchase price, but McDougald was elusive,
and Lyon's efforts in that direction were not crowned
with success.

Viewing the case from any standpoint, the letter writ-
ten by the brokers to the defendants, and which was
entirely voluntary upon their part, and written purely
through a spirit of accommodation, in no way changes
the *status* of this litigation. In speaking as to the effect of
this letter, respondent's counsel says: " While we do not
contend that they [the owners] would or should demand
of appellants anything unreasonable or impossible, they
had the right to demand and receive evidence sufficient
to satisfy them, as reasonable men, that the premises
would be sold according to the terms of the power or
authority given appellants." After a review of the evi-
dence upon this point, we can say it fills the measure
furnished by respondent's counsel. If the letter bound
the brokers to convince the owners, by eight o'clock
upon Thursday morning, the 22d, that a sale would be
made upon that day, or that all their rights under the
contract would lapse by reason of a failure so to do, then
the brokers fulfilled the self-imposed conditions; for at
the agreed time ample evidence was produced to con-
vince McDougald of the certainty of the sale. At least
the evidence was sufficient to convince a fair man of
ordinary understanding, a man who was honestly will-
ing to be convinced, and, consequently, it must be held

that McDougald was convinced. But, aside from the foregoing considerations, we think the letter a false quantity in the case. It neither strengthens nor weakens the cause of either party. The contract of defendants was simply an employment of Gaman & Lyon, as brokers, to negotiate a sale of the realty. They were made sole agents for that purpose for the period of five days from September 17th, which would include the entire day of September 22d. It is insisted that the letter modified the terms of the contract, but the letter itself in express words says: "We cannot, in justice to ourselves, release you."

As already suggested, the letter was entirely voluntary, no pecuniary consideration passed to the brokers for its issuance, and there were no mutual covenants. It did not possess a single element necessary to create a binding, valid contract upon the brokers. Again, conceding the letter to have a binding force upon the writers of it, it in substance says: "We cannot now release you from the contract, but if we do not convince you by Thursday morning at eight o'clock that we will make a sale, we will *then* waive all claims under the contract." This statement amounts simply to a conditional promise to waive something at a specified time *in futuro*. It is not a waiver, but an agreement to waive at a particular future time. There can be no waiver until the time arrives and the condition fails, and when the time does arrive, if the party declines to waive the only result is a violated promise and a breach of the agreement. The waiver does not take place *ipso facto* upon the failure of the condition and the arrival of the appointed time. Positive action upon the part of the party holding out the promise is demanded. This letter, conceding the failure of the condition, does not constitute a waiver of rights under the contract any more than a promise by an attorney to his brother attorney that upon the morrow he will extend his time ten days to file a brief constitutes in itself such extension.

No question of estoppel arising from the letter is

suggested by counsel, neither does it appear to be present in the case. But it is insisted by some of respondents' counsel that a waiver took place, or an estoppel against plaintiffs was created at the eight o'clock meeting in the lawyer's office, and the basis of this contention is found in the following testimony of defendant's attorney: "He went away when Mr. McDougald told him he would wait until half past nine o'clock for the money, and if he came back with the money in that time they would complete this trade. If not, he would go down below and take up the other offer, and Mr. Lyon left, saying, 'Very well.' That is the last I saw of him." Conceding the broker to have used the words charged to him, still it is a very small thing out of which to build either a waiver or an estoppel. The pecuniary interests here involved are too weighty to depend upon such a slender thread. The phrase "Very well" may mean assent, and again it may mean the strongest dissent. Tone, inflection, gesture, and manner are the only indicators by which the phrase may be properly interpreted. The subsequent history of the various doings of these parties upon this day destroys the claim of either a waiver or estoppel upon the part of plaintiffs.

The brokers were simply authorized to negotiate a sale. Their contract was completed and their commissions earned when they produced a purchaser within the five days, ready, willing, and able to purchase upon the terms stated in the contract of employment. They had all of the twenty-second day of September in which to produce such purchaser, and upon that day they did produce a purchaser in the person of C. D. Barrows. That he was ready, able, and willing to purchase is entirely apparent from the record. It can scarcely be said to be denied by opposing counsel. The fact that his check was not a legal tender amounts to nothing. He was not required to produce at that eight o'clock meeting either check or money. He was not required to attend any meeting whatever at that time. He was

entitled to the last hour of the fifth day in which to pay the $10,000. The contract so expressly provided. At this meeting he offered himself as the purchaser upon the terms presented by the contract, and stated he would pay the $10,000 in cash as soon as the bank opened, an event which was near at hand. He attempted to pay the $10,000 through his broker during the entire day of the 22d, but was prevented by his failure to secure a personal audience with McDougald. He was not only willing, but using his best efforts to pay this money, free of all limitations and conditions not found in the contract, and his efforts to make the first payment upon the purchase price is the highest evidence that he was a purchaser, ready, able, and willing to take the property. Aside from these considerations, the property was sold to third parties at ten A. M. upon the 22d, and, if a tender of the first payment ever was required in order to establish Barrows' ability and good faith in the transaction, the conduct of the owners in making this sale waived it.

Conceding that no liability for commissions was created against respondents by the occurrences taking place at the meeting in the lawyer's office, appellants still make a showing by subsequent events that entitles them to recover. From ten o'clock A. M. until Dr. Barrows left the city of Stockton, some time during the afternoon of that day, he was there, ready and willing to buy the land upon the terms fixed by the owners. He had the ten thousand dollars in hand and was anxious to make the first payment. This period of time was during the life of the contract, and when those conditions existed defendants' liability attached. The fact that one of the owners was in Sacramento, another in Arizona, and the third was suddenly called from the city to look after important matters upon his farm during the expiring hours of the contract is entirely immaterial. It is apparent that the broker was acting in good faith, and his rights cannot be sacrificed or injuriously affected by the

absence of all the owners from the city of Stockton at this important period of time.

For the foregoing reasons it is ordered that the judgment and order be reversed, and the cause remanded for a new trial.

DE HAVEN, J., FITZGERALD, J., McFARLAND, J., and BEATTY, C. J., concurred.

HARRISON, J., dissenting.—A broker's contract for the sale of real estate is to be construed under the same principles as is any other contract. It is a contract of employment wherein the right to compensation is established when the broker has performed the contract according to the terms of his employment; and until he has rendered the services for which he was employed he has no right to compensation. "The general rule of law as to commissions undoubtedly is that the whole service or duty must be performed before the right to any commissions attaches, either ordinary or extraordinary; for an agent must complete the thing required of him before he is entitled to charge for it." (Story on Agency, sec. 329.) The rendering of such services being in the nature of a condition precedent to his right of recovery, the burden of proving the performance of the condition is upon him, and its performance must be satisfactorily established in the mode and to the extent stipulated by the contract of employment. (Wharton on Contracts, sec. 601; *Hinds* v. *Henry,* 36 N. J. L. 328.) For the purpose of showing, therefore, whether he has performed his contract, it is first necessary to ascertain the terms of the contract. The ordinary contract between a broker and the owner is that he will find a purchaser upon certain specified terms who will be acceptable to the owner. Sometimes other terms are included in the contract, such as that a sale shall be effected (*Walker* v. *Tirrel,* 101 Mass. 257; 3 Am. Rep. 352), or that his commission shall be payable out of the purchase money (*McPhail* v. *Buell,* 87 Cal. 115), or that

he shall have a fixed compensation for his services, irrespective of the result. But, in the absence of some term qualifying his employment, his contract is performed only when he finds a purchaser who is able, ready and willing to make the purchase according to the terms upon which he was employed to make the sale.

To find a purchaser, however, means more than to procure some one who will offer to negotiate for the purchase. It implies the production of one who is not only ready and willing to comply with the terms of the purchase, but who has also the present ability to consummate it, and to comply with all of its terms, and who is also willing and ready to do all the acts that may be required to make an actual purchase of the land. · To produce one who makes an offer to purchase, and who is without means, or who is not in condition to comply with the terms of the sale, and against whom a claim for damages resulting from a failure to perform the contract of purchase could not be enforced, does not constitute the finding of a purchaser within the terms of the agreement (*Iselin* v. *Griffith*, 62 Iowa, 671); and the mere statement by one who is produced that he is ready and willing to make the purchase, even if he has the ability to do so, does not render him a purchaser, if at the same time he refuses to do the acts which are requisite to consummate the purchase.

Upon the production of such purchaser, if the transaction is not to be consummated by an immediate delivery of the deed and payment of the purchase money, the owner has the right to demand that a valid, enforceable contract for the purchase of the land shall be executed by him, and the services of the broker have not been fully performed until such agreement is executed. The owner may, however, waive the execution of such contract; as, if after the broker has introduced the purchaser to him, he himself assumes to prepare a contract which afterwards proves defective, or to deal with the purchaser upon other terms, or accepts a parol obligation from him. The broker is entitled to his commis-

sions whenever the purchaser who is produced by him is accepted by the owner, even though the owner fail to make a binding contract or to enforce the execution thereof, or though either by reason of defect of title, or a refusal of the vendor or vendee to perform such contract, the sale be not afterwards consummated. So, too, the owner may by his own conduct prevent the execution of the contract, or its fulfillment on the part of the purchaser by insisting on other terms, or by a refusal to sell, or from a defect in his title. In such case the broker is entitled to his commissions, upon the principle that he has fully complied with all the terms of his employment, except those which have been waived, or from which he has been released by the acts of the owner.

It is not essential, however, that the owner and the purchaser should be brought face to face. The broker sufficiently performs his agreement if he tenders to the owner a valid, written contract containing the terms of sale agreed upon, executed by a party able to comply therewith, or to answer in damages if he should fail to perform. (*Hayden* v. *Grillo*, 35 Mo. App. 647.) The contract must, however, be one which the owner can enforce against the vendee, and must be delivered to the owner. The owner is not bound to accept the statement of the broker that he has a contract, or that a deposit had been made with him on account of the purchase. He is entitled to the contract itself, and also to the deposit made thereunder, and to know whether the purchaser is able to carry it out. The person proposed by the broker may be insolvent, and thus during the pendency of the transaction the owner might lose the opportunity of making a valid sale. Much less is the owner required to accept a verbal contract made on his behalf by the broker, even though a deposit has been made with the broker upon such verbal contract. A verbal contract made by the purchaser with the broker is insufficient. A sale of real estate can be made only by an instrument in writing, and is " negotiated " only when such instrument has been executed. A binding con-

tract for a sale constitutes a sale within the meaning of such an agreement (*Rice* v. *Mayo*, 107 Mass. 550), and an employment to negotiate a sale has been held to be satisfied by finding a purchaser. (*Phelps* v. *Prusch*, 83 Cal. 626.) It is not, however, a part of the broker's employment to prepare a contract of purchase to be executed by the purchaser. (*Cook* v. *Kroemeke*, 4 Daly, 268.) He has done all that he was employed to do when he has produced a purchaser who is acceptable to the owner. The preparation of such agreement, and any further negotiations regarding the terms of purchase, are to be made between the owner and the purchaser. In the absence of special authority therefor the broker has no authority to enter into any contract on behalf of the owner (*Duffy* v. *Hobson*, 40 Cal. 240; 6 Am. Rep. 617,) or to make any contract on behalf of the purchaser, a broker being " one who makes a bargain for another, and receives a commission for so doing." (*Pott* v. *Turner*, 6 Bing. 706.) " The duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his rights to commissions do not accrue" (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378; 38 Am. Rep. 441); but the agreement for the purchase must be one that is valid and can be enforced.

The foregoing principles have been established in various decisions, and may be regarded as settled rules for construing the contract between brokers and their principals. (*Masten* v. *Griffing*, 33 Cal. 111; *Phelan* v. *Gardner*, 43 Cal. 306; *Gonzales* v. *Broad*, 57 Cal. 224; *Hyams* v. *Miller*, 71 Ga. 608; *Veazie* v. *Parker*, 72 Me. 443; *Buckingham* v. *Harris*, 10 Col. 460; *Moses* v. *Bierling*, 31 N. Y. 462; *Mooney* v. *Elder*, 56 N. Y. 240; *Barnard* v. *Monnot*, 3 Keyes, 203; *Love* v. *Owens*, 31 Mo. App. 510; *Hayden* v. *Grillo*, 35 Mo. App. 654; *McGavock* v. *Woodlief*, 20 How. 221; *Coleman* v. *Meade*, 13 Bush, 363; *Watson* v. *Brooks*, 11 Or. 271; *Hinds* v. *Henry*, 36 N. J. L. 328; *Love* v. *Miller*, 53 Ind. 294; 21 Am. Rep. 192; *Glent-*

*worth* v. *Luther,* 21 Barb. 145; *Leete* v. *Norton,* 43 Conn. 219.)

There are expressions in the opinions in some cases to the effect that a written contract of purchase is not necessary in order to entitle the broker to his commissions, but an examination of these cases will show that in each one of them the written contract was waived by the owner, or that the owner himself refused or was unable to consummate the sale. We know of no authority in which it has been held, or even stated, that if the owner insists upon the execution of a valid contract of purchase, and the purchaser produced by the broker fails or declines to enter into such contract or to comply with the other terms of purchase, the broker is nevertheless entitled to his commissions.

The owner does not lose his right to make a sale of the property by reason of his having employed a broker (*Dolan* v. *Scanlan,* 57 Cal. 264; *Hungerford* v. *Hicks,* 39 Conn. 259; *McClave* v. *Paine,* 49 N. Y. 561; *Wylie* v. *Marine Nat. Bank,* 61 N. Y. 415), or to employ other brokers for the same purpose; and the mere fact that he has made a sale within the time allowed the broker by his employment does not entitle the broker to his commission unless the broker has, within the terms of his employment, found a purchaser (*Waterman* v. *Boltinghouse,* 82 Cal. 659; *Stewart* v. *Murray,* 92 Ind. 543; 47 Am. Rep. 167); and however much he may have labored for the purpose of securing the purchaser, he is not entitled to commissions unless he produces one.

"A broker is never entitled to commissions for unsuccessful efforts. The risk of failure is wholly his. The reward comes only with his success. That is the plain contract and contemplation of the parties. The broker may devote his time and labor and expend his money with ever so much of devotion to the interests of his employer, and yet if he fails, if, without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions. He loses

the labor and effort which was staked upon success, and in such event it matters not that after his failure and the termination of his agency, what he has done proves of use and benefit to the principal." (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 383; 38 Am. Rep. 441.)

Under the foregoing principles the plaintiffs did not negotiate a sale or find a purchaser for the land, and consequently did not become entitled to compensation for their services. No agreement in writing for the purchase of the land was ever made by Barrows, and when he was introduced to the owners as the purchaser he not only did not comply with their demand that such contract be executed, but he also failed to comply with their terms of sale. It was specified in the instrument of September 17th that $10,000 of the purchase price should be paid "within the five days." This can only be construed as meaning that this amount of money should be deposited with the owners within that time as a payment on account of the purchase price, without any condition, and as an earnest of good faith on behalf of the purchaser that he would complete the purchase, subject, of course, to the implied agreement on behalf of the owners that it would be repaid if, through any fault on their part, the sale should not be completed. The succeeding clause in the agreement that $5,000 additional should be paid "on confirmation of the title" shows that this $10,000 was to be paid irrespective of and before any examination of title.

At the first interview between the plaintiff Lyon and the owners on the morning of the 22d, he had neither a contract on behalf of Barrows, nor did he produce Barrows as a purchaser, nor did he offer to pay or deposit with the owners the ten thousand dollars, but insisted that as broker he had the right to retain this amount of money until after the examination of the title and completion of the sale. The function of a broker, however, as we have seen, is merely to make bargains, and not to execute contracts, and he was neither authorized to retain the money

which his customer had given him with which to make a deposit or part payment on account of the purchase, nor to receive or hold the money for the account of the owners. Budd, on behalf of the owners, refused to accept the check as a compliance with the terms of the sale, on the ground that it was not money, and so stated to the plaintiff Lyon, and also stated to him that, if Barrows would come with the money or what they knew to be money, he would then close the matter up, and put the agreement in writing so that it would be binding on all parties. Lyon then went away, and after a few minutes returned with Barrows, who stated that he was willing to purchase the land according to the terms of agreement, if the title was good, and again tendered the check as a performance of the condition to pay the ten thousand dollars. The owners, however, again declined to accept the check, upon the express ground that it was not a legal tender, or the equivalent of money, and Budd said to him that he was ready to draw up the contract and accept the money, but would not accept the check. This interview took place before the hour for the opening of the bank in Stockton. The check was drawn upon a bank in San Francisco, and was made payable to the order of the plaintiffs, Gaman & Lyon; and McDougald on behalf of the owners thereupon stated to Lyon and Barrows that he would wait at Budd's office until half past nine o'clock, and that if they then had the money there, the trade would be made; otherwise he would close with the other parties. To this Lyon assented, and thereupon Barrows and Lyon left the office without saying whether or not they would return, but neither of them did in fact return, and a little after noon of that day Barrows left Stockton, and about the same time Lyon obtained the money on the check, and took from the bank a certificate of deposit, payable to his own order. McDougald and Budd waited at the office of the latter until about ten o'clock, and afterwards on the same day closed the contract for the sale with the other parties.

When it was thus shown to the court below that no contract for the purchase of the land was ever made by or on behalf of Barrows, and that when he was introduced to the owners he did not comply with the terms of the sale, and that when he was informed by them that they would require a contract of purchase to be made by him, and that the ten thousand dollars should be paid to them in money at the same time, instead of complying therewith, or saying that he was willing to do so, he went away, and soon after left town, and did not thereafter in any form offer to make such payment, or to enter into such contract, the court was justified in finding and adjudging that the plaintiffs had not performed their contract of employment, and that they were not entitled to a recovery from the defendants.

PATERSON, J.—I concur in the views of Mr. Justice Harrison.

Rehearing denied.