[No. 11. Third Appellate District.—June 10, 1905.]

## R. HILL, Respondent, v. C. L. McCOY, Appellant.

ACTION FOR BROKER'S COMMISSION — MEMORANDUM OF AGREEMENT—DESCRIPTION OF LAND—PLEADING—LOCATION AND IDENTIFICATION—DEMURRER.—In an action by a real-estate broker to recover commission on the sale of land under a written memorandum sufficient under the statute of frauds, but describing the property by name and acreage only, the complaint, after setting forth such memorandum *in haec verba*, properly made additional averments to locate and identify the property. Neither a general demurrer to such complaint, nor a special demurrer for ambiguity and uncertainty on the ground of variance from the memorandum pleaded, is sustainable.

ID.—PAROL EVIDENCE.—Parol evidence was admissible to prove such identifying averments at the trial. Parol evidence is always admissible to identify land referred to by name in a contract.

ID.—CURE OF RULINGS AGAINST EVIDENCE.—Rulings against the admissibility of evidence are, if erroneous, cured by the further full testimony of the witness to the same matters.

ID.—SUPPORT OF FINDING—EARNING OF COMMISSION—TERMS FIXED BY OWNER.—Where the contract provided for commission at a certain rate for procuring a sale upon terms fixed by the owner, a finding that plaintiff earned the commission sued for by procuring a purchaser with whom he sought to negotiate a sale, which was finally made by the owner upon terms fixed by him without plaintiff's

knowledge during the life of the agreement, is sufficiently supported, notwithstanding conflict in the evidence, where the trial court might reasonably infer as a fact that the sale was effected through plaintiff's agency as its procuring cause.

APPEAL from a judgment of the Superior Court of Sonoma County. S. K. Dougherty, Judge.

The facts are stated in the opinion of the court.

John T. Carey, for Appellant.

Clarence F. Lee, for Respondent.

CHIPMAN, P. J.—Plaintiff brought the action to recover commission as broker for the sale of defendant's land. The cause was tried by the court without a jury and plaintiff had judgment, from which defendant appeals on bill of exceptions.

The court found that plaintiff and defendant on September 22, 1900, entered into a contract by which plaintiff was "authorized to and agreed to act as broker to bargain for and procure a purchaser for 47 acres of land with the improvements thereon, at that time owned by said defendant," known as the Abbey ranch; that it was further agreed "that if said ranch was sold to a purchaser procured by said Hill [plaintiff] or through his agency that said defendant would pay to said plaintiff 5 per cent on $10,000 or any less amount that said defendant might accept for said ranch"; that "at the time said contract was entered into a memorandum thereof, in writing, was made and executed and subscribed by said defendant, the party to be charged thereby, and delivered to the plaintiff by him . . . as follows, to wit: 'I hereby authorize R. Hill of Windsor, Cal., as broker, to bargain for the sale of 47 acres (known as the Abbey ranch) with the improvements thereon—valued at $10,000—for which service I agree to pay to said Hill 5 per cent on the above-mentioned sum or any less amount I may accept for said ranch. Provided said ranch is sold to a purchaser procured by said Hill or through his agency. Sept. 22nd, 1900. C. L. McCoy' ''; that "in pursuance of said contract and agreement plaintiff procured a purchaser, John Fopiana, who purchased said ranch from defendant" at the price of $7,500, accepted by defendant, and

to said Fopiana a good and sufficient deed was made by defendant November 22, 1900, and possession delivered.

As conclusion of law the court found that plaintiff was entitled to judgment for $375, "commission for the sale of said ranch and improvements thereon," and interest from November 22, 1900, and judgment passed accordingly.

1. Defendant demurred generally to the complaint, and also specifically, alleging ambiguity and uncertainty, because, as is claimed, the contract pleaded, in its legal effect, is at variance with and is different from the contract set out *in haec verba.* It is claimed that the demurrer should have been sustained.

It is permissible to declare on a contract either by pleading its legal effect or *in haec verba* (*Stoddard* v. *Treadwell*, 26 Cal. 294); and, where the contract is in writing, the latter is regarded as the better mode. "But," as was pointed out in *Joseph* v. *Holt*, 37 Cal. 250, "to enable the pleader to adopt this latter mode, the instrument which is thus adopted as a part of the complaint must show *upon its face* in direct terms, and not by implication, all the facts which the pleader would have to allege under the former mode of pleading by averment. For example: a note or memorandum in writing of a contract may be sufficient to take it out of the statute of frauds, but prove insufficient as a pleading when put to use for that purpose." In the present case, we think the contract signed by defendant was sufficient as a "note or memorandum thereof," under subdivision 6 of section 1624 of the Civil Code, and was valid within the meaning of the section, but it failed to state with fullness and precision sufficient to permit its use alone as a pleading, and hence it became necessary, and it was entirely within the rules of pleading, to set forth, in aid of the memorandum, the facts essential to make the pleading complete. The complaint does not set forth more than one cause of action, nor is it ambiguous or uncertain. In stating where the so-called "Abbey Ranch" is situated, where the memorandum failed to do so, the pleader merely supplied a fact which it was competent to prove at the trial. Where the contract is set out, if it is uncertain, "the pleader must put some definite construction on it by averment." (*Durkee* v. *Cota*, 74 Cal. 313, [16 Pac. 5]; *Lambert* v. *Haskell*, 80 Cal. 611, [22 Pac. 327].) The only material

fact set out in the complaint, and not substantially appearing in the memorandum, is the fact as to the location of the land with a view to identification. We do not think the complaint was obnoxious to the objections raised by the demurrer.

2. Against the objection of defendant the land in question was identified and proved at the trial as the land referred to in the contract. From what has already been said, it would follow that proof by parol, to identify the land referred to as the "Abbey Ranch," was permissible. Such proof is always allowed for the purpose of identifying land described as in the contract before us. (Code Civ. Proc., sec. 1860.) It is sufficient to describe the land by its general designation, as "The Norris Ranch" (Civ. Code, sec. 1092) in a grant deed; and undoubtedly parol evidence is admissible to show what ranch is meant by such a designation. In *Toomy v. Dunphy,* 86 Cal. 639, [25 Pac. 130], it was held that where the contract was silent as to the commission to be paid or the character of the services precisely stated, they could be shown by parol; and in *Preble v. Abrahams,* 88 Cal. 245, [22 Am. St. Rep. 301, 26 Pac. 99], evidence was admitted to show what land was meant by the phrase "forty acres of the eighty-acre tract at Biggs." (See Pomeroy on Contracts, sec. 227, note; *Reamer v. Nesmith,* 34 Cal. 624.)

Upon his cross-examination as a witness plaintiff was asked certain questions to which plaintiff's objections were sustained. If there was error it was cured by the fact that the witness testified thereafter fully to the matters thus sought to be brought out.

3. It is urged that the evidence is insufficient to support the findings. We do not feel called upon to recite the evidence tending to show to what extent plaintiff was instrumental in effecting a sale of the property to Fopiana or that it was "sold to a purchaser procured by said Hill, or through his agency," as the agreement provides. He was authorized "to bargain for the sale of 47 acres" of the Abbey ranch, and, if sold to a purchaser procured by him or through his efforts, he earned his commission. We think there is sufficient evidence to support the findings upon these provisions of the agreement.

The rule laid down in *Dolan v. Scanlan,* 57 Cal. 261, has been frequently referred to with approval, and expresses the

true rule as we understand it, namely: "The commission of a broker is earned by finding a sufficient purchaser ready and willing to enter into a valid contract for the purchase, upon the terms fixed by the owner, and having introduced such a one to the owner, as a purchaser, he is not deprived of his right to a commission by the owner negotiating the contract himself." (See the rule considered in *Phelan* v. *Gardner*, 43 Cal. 306; *Oullahan* v. *Baldwin,* 100 Cal. 648, [35 Pac. 310] ; *Crawford* v. *Independent Stone Pipe Works*, 83 Cal. 629, [24 Pac. 836] ; *Ayres* v. *Thomas*, 116 Cal. 140, [47 Pac. 1013] ; *Gregory* v. *Bonney*, 135 Cal. 589, [67 Pac. 1038].) Cases cited by the appellant where the time was limited within which the sale was to be made or where the authority had been seasonably revoked do not apply. Here there was no limit as to time, and the sale was made within fifty days after his authority was given, during all which time plaintiff was more or less active in endeavoring to complete the sale to Fopiana, whom plaintiff introduced to defendant as a possible purchaser.

It is urged that because plaintiff admits that he did not finally negotiate the sale in person, and did not know until after it was finally completed that a sale had been perfected, he therefore failed to earn his commission. (Citing *Zeimer* v. *Antisell*, 75 Cal. 512, [17 Pac. 642], and *Ayres* v. *Thomas*, 116 Cal. 144, [47 Pac. 1013].) The first of these cases went off on the fact that the agent did not effect a sale within the time limit. In the second the decision hinged upon certain instructions. But the rule was approved that commissions are earned when the evidence shows that the broker was the moving or procuring cause of the consummation of the transaction. Appellant cites *Wylie* v. *Marine National Bank*, 61 N. Y. 415, as very similar to the case at bar. This case enunciates no different rule from that claimed by respondent. It was held, however, that where the broker opens negotiations, but, failing to bring the customer to the specified terms, abandons further negotiation, and the employer sells to the same person at the price fixed, he is not liable to the broker for his commissions. We do not think the evidence warrants appellant's claim that plaintiff had abandoned his efforts to make a sale; the case in its facts differs materially from the Wylie case, 61 N. Y. 415. *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378, [38 Am. Rep. 441], is relied on by appellant, and is

a case often cited approvingly as a correct exposition of
the principles upon which brokers may claim commissions.
That case, however, differs from this in the very essential fact
that after a reasonable time, some four months, within which
to make the sale, and, being unsuccessful, the employer ter-
minated the broker's agency, which the court held he could
do, the commissions not having been earned, "unless upon the
sole and only ground that the defendant terminated the
agency in bad faith and as a device to get the benefit of plain-
tiff's labors without paying for them." That case is inap-
plicable and in no wise supports appellant's contention. See
the principles here involved, somewhat discussed in *Ropes* v.
*John Rosenfeld's Sons*, 145 Cal. 671, [79 Pac. 354], where the
time limit having expired before sale made was the principal
ground on which the employer successfully resisted payment
of commissions to the broker.

There was evidence tending to show that defendant, some
time in the summer of 1900, placed the property in the hands
of one Scott as agent for its sale, and that, through one
Foerstler, the sale to Fopiana was finally consummated.
Scott's authority preceded that given plaintiff, but it was not
until after plaintiff had brought Fopiana and defendant to-
gether for the purpose of effecting a purchase and sale that
Scott had anything to do with the sale of Fopiana. Indeed,
he supposed he was making the sale to Foerstler, until later,
when a deposit was made, he learned that the purchaser was
Fopiana, and he then recognized Foerstler as his co-agent in
the transaction. Plaintiff testified: "At the time Mr. Mc-
Coy signed the authorization to me he told me that he had an
exclusive contract with Mr. Scott of Healdsburg and he asked
me to divide the commission with him if I made a sale. I told
him I was not working for Mr. Scott.'' Defendant at no
time revoked his authority given to plaintiff. It appears that
Fopiana was seeking a farm for his two sons, and was look-
ing at what was called the Prouse place, at plaintiff's sug-
gestion, while considering defendant's place. As late as
November 10, 1900, he employed plaintiff to attend the auc-
tion sale of the Prouse place and bid for him. It was sold
at a price too high for Fopiana, and failing to get it plaintiff
again took up with him the purchase of defendant's place,
and plaintiff testified that Fopiana then told plaintiff he

would give eight thousand dollars for defendant's place, and it was arranged, according to plaintiff's testimony, that Fopiana's two boys should go and look at the place the next day (Sunday), which they did, and Fopiana was to notify plaintiff "if he could take it."

It appears that about this time Fopiana fell in with Foerstler and thenceforward conducted the business of purchase with him without plaintiff's knowledge, and on Monday, November 12, 1900, made a deposit with Scott of one thousand dollars on account of the purchase. There is some evidence tending to show that Scott and Foerstler were working together in the matter some little time before November 10th, but plaintiff was not informed of the fact (if that would make any difference, which we doubt) by either defendant or his agents, Scott and Foerstler, or by the Fopianas, and plaintiff first learned of the sale about November 15th, as he testified. Not having been revoked, his authorization was in full force when the sale took place, November 12th, though the deed did not pass until later.

There may be some doubt as to the precise meaning of the language, "to bargain for the sale," used in the agreement. But no doubt can surround the meaning of the language, "Provided said ranch is sold to a purchaser procured by said Hill, or through his agency." Defendant thus agreed to pay the commission if the ranch was sold to a purchaser brought to defendant by plaintiff directly *or* through his efforts.

The fact that the sale was made for less than ten thousand dollars does not affect the question, for the agreement provided that defendant would pay the commission on any less amount that he might accept for the ranch.

It was held in *Lloyd* v. *Matthews,* 51 N. Y. 124, that where the owner has placed his property in the hands of two or more brokers to sell, notice to one of a change of purpose does not affect another; and if the broker's communications with the purchaser are the means of bringing him and the owner together, and the sale results in consequence, the compensation is earned, although the broker does not negotiate and is not present at the sale. (*Dolan* v. *Scanlan,* 57 Cal. 261. See, also, *Sussdorff* v. *Schmidt,* 55 N. Y. 319.)

In cases like the present one it is not always entirely obvious that the sale was effected through the broker's agency

as its procuring cause. There is always a possibility that had the broker not brought the seller and buyer together, some other broker might have done so, or the parties might have met by chance and through no agency of any broker, and hence it might be said the employed broker was not the procuring cause of the sale. But where it appears, as here, that the seller and buyer were for the first time brought together by the broker duly authorized to act for the seller, and the sale was subsequently consummated by the same seller and buyer, acting independently of the broker, the broker not having abandoned his agency, and the seller not having revoked the broker's authorization or done any act from which a revocation may be implied, we think the inference is a reasonable one, and may be drawn by the jury, that a sale under such circumstances is effected through the broker's agency as its procuring cause. Especially may this inference be drawn where both seller and buyer have negotiated with knowledge of the broker's previous employment.

It is true that there was sharp conflict in some of the testimony; but upon the trial court alone devolved the duty as well as the power to finally reconcile controverted questions of fact, and with its determination where a conflict in the evidence arose we cannot concern ourselves.

The judgment is affirmed.

Buckles, J., and McLaughlin, J., concurred.