[Civ. No. 870.    Third Appellate District.—December 4, 1911.]

EDWARD DINKELSPIEL, Appellant, v. JAMES E. NASON et al., Respondents.

ACTION FOR BROKER'S COMMISSIONS—LEASE FOR YEARS WITH OPTION TO PURCHASE—EXERCISE OF OPTION—TENDER—PURCHASE—STATUTE OF LIMITATIONS.—Where a broker introduced a purchaser, to whom the owner gave a lease for the term of five years with an option to purchase on the terms given to the broker, and the purchaser, about a month before the expiration of the term, tendered the full purchase money, and the day after its expiration the sale was consummated on said terms, the statute of limitations did not begin to run against an action by the broker for the recovery of his commissions until the sale was consummated or the tender made by the lessee as purchaser.

ID.—LEASE WITH MERE OPTION TO PURCHASE—BROKER'S COMMISSION NOT EARNED.—A broker earns no commission when a mere lease is given to the proposed purchaser found by the broker, with a mere option to purchase, upon the proposed terms. Such mere option is not a "sale," as that term was used in the contract by the broker with the owner. To entitle the broker to his commissions, the cus-

tomer produced by him must come to a final agreement on the terms of the transaction with the owners.

ID.—ABSENCE OF AGREEMENT TO PAY COMMISSIONS UPON WITHDRAWAL OF PROPERTY FROM SALE—COVENANT NOT IMPLIED.—Where there was no express agreement to pay commissions, in case of the withdrawal of the property from sale by the owners, he is not entitled to immediate commissions, on the ground that the lease to the purchaser operated as such withdrawal. There is no implied covenant that the owners would not lease the property to the proposed purchaser, with an option to purchase, or that if they did so, the broker would become immediately entitled to his commissions.

ID.—EFFECT OF LEASE WITH OPTION TO PURCHASE—BAD FAITH TOWARD BROKER NOT SHOWN—STEP TOWARD SALE.—It cannot be urged that the owners by entering into a lease with the proposed purchaser with an option to purchase were acting in bad faith, or that they were attempting to avoid their contract with their agent. They were acting within their rights, and, as matter of fact, the lease with the option to purchase was a step toward the consummation of the purchase, and in contemplation of a sale that would entitle the agent to his compensation. All parties had the right to assume that no claim for commissions could be successfully asserted unless the agent or the owners should secure a purchaser ready and willing to buy the property.

APPEAL from a judgment of the Superior Court of Solano County. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

T. T. C. Gregory, for Appellant.

W. U. Goodman, for Respondents.

BURNETT, J.—On July 28, 1904, plaintiff entered into a broker's contract with defendants for the sale of certain real property. Plaintiff was authorized to sell the property for $30,000 or any less sum accepted by defendants, and he was to receive a commission of five per cent. This provision was also in the agreement: "We also agree to pay said Edward Dinkelspiel, in the event of the sale of said property by him, or by anyone else, including ourselves, while this agreement is in force five per cent as and for his compensation thereunder." The contract was to continue until withdrawn by defendants in writing, and it was in force during all the time herein mentioned. On April 17, 1905, defendants leased the

property to one William Pierce for the term of five years from April 1, 1905. The lease contained the following provision: "It is agreed that at any time during the said term, the said party of the second part (Pierce) may, at his option purchase from the said parties of the first part (defendants) the said premises for the sum of $18,000.00 in gold coin; and the said parties of the first part will, in consideration of the said $18,000.00, convey to the said party of the second part a good, clear and valid title." The complaint is in two counts. In the first it is alleged that: "On or about December 6, 1909, said William Pierce tendered to defendants the sum of $18,000.00 in gold coin. Said defendants and each of them refused to accept the said sum. At said time, the said William Pierce was ready, willing and able to buy the said property in accordance with the terms of said exhibit 'B' (the lease) and so informed the said defendants and each of them, and offered to purchase the said property for the sum of $18,000.00 on the said date."

In the second count it is alleged that "on or about April 2nd, 1910, the real property was sold by defendants for the sum of $18,000.00 to said William Pierce." Hence, the claim for $900 as commissions.

A demurrer, on various grounds, including the statute of limitations, was interposed and the court made the following order: "It is hereby ordered that the demurrer to the complaint of plaintiff, and each cause of action set forth therein is hereby sustained upon the ground that the action is barred by the provisions of subdivision one of section 337 of the Code of Civil Procedure and said demurrer is overruled as to all other points." The appeal was taken from the judgment of dismissal of the action.

It is stated by appellant that "It is the theory of defendants, and the one adopted by the court, that the cause of action arose in favor of plaintiff when the option was given to Pierce on April 17, 1905. Our position is that no cause of action arose until the tender or sale was made." The only controverted question then is: When is a broker, under such a contract, entitled to his commission? The agreement provided, in clear and simple language, that plaintiff was to receive the five per cent in the event of a sale by *himself* or

17 Cal. App.—38

by *defendants*.or by anyone else. It is not disputed that the sale of the premises did not take place until the tenth day of April, 1910. So, if we are to follow the ordinary signification of the terms employed, we would reach the conclusion that plaintiff's cause of action arose on that date. But when it is provided that a broker shall receive a commission for the sale of property, it is universally held that he earns his commission when he has produced a purchaser who is ready, able and willing to purchase upon the terms prescribed. (See *Justy* v. *Erro,* 16 Cal. App. 519, [117 Pac. 575], and cases therein cited.) If the same rule should be applied to a case like this where the broker is to receive a commission for a sale by the owner, then, according to the allegations of the complaint, the cause of action arose on December 6, 1909, for the reason that Pierce was at that time ready, able and willing to purchase the property according to the terms of his option. At all events, it seems entirely clear that plaintiff had not earned his commission at any time prior to December 6, 1909, and therefore the action was not barred by the statute of limitations.

It seems to be held without conflict that a mere option to purchase does not entitle the broker to his commission. It is not a "sale" as that term is used in his agreement with the owner.

The rule is stated in 19 Cyc. 251 and 252, as follows: "To entitle a broker to a commission the customer produced by him and the principal must come to a final agreement on the terms of the transaction. Consequently the conclusion of a preliminary or tentative agreement which is not binding upon the party, and which is not carried into effect, does not give a right to compensation. Nor is a broker entitled to a commission where he procured a contract between the parties subject to a condition not authorized by the terms of his employment. So if a broker employed to effect a transaction merely secured from a customer a contract by which the latter becomes entitled to enter into the transaction at his option, the broker is not entitled to his commission. Thus a broker, employed to sell property, is not entitled to compensation for procuring a customer who takes an option on the property."

The same doctrine is announced in the well-considered case of *Brown* v. *Mason,* 155 Cal. 155, [99 Pac. 867, 12 L. R. A.,

N. S., 328]. The two essentials to a broker's right to recover are stated by the court, through Mr. Justice Melvin, as: "1. That he should produce and introduce to the seller a customer ready, able and willing to take the property upon the terms stipulated; and 2. That this should be done within the time limit of the option." The court mentions certain exceptions to the rule, not in point here, and concludes that "Wanting any of these exceptions, however, a broker is strictly held to the terms of his contract." In that case the plaintiff, Brown, was to get a commission for selling the property. He took a Mr. Long to defendant and Long obtained an option to purchase the property but did not purchase it under that option. The supreme court held that Brown was not entitled to any commission.

In *Brackenridge* v. *Claridge*, 91 Tex. 527, [44 S. W. 819, 43 L. R. A. 519], it is held that "A contract by a broker to find a purchaser for land is not performed, so as to entitle him to a commission, where he procures one who merely obtained an option on the land, and made no offer to purchase."

Other cases to the same effect cited by appellant are: *Lawrence* v. *Rhodes*, 188 Ill. 96, [58 N. W. 911]; *Bennett* v. *Egan*, [3 Misc. Rep. 421], 23 N. Y. Supp. 154; *Ward* v. *Zborovski*, [31 Misc. Rep. 66], 63 N. Y. Supp. 219; *Walsh* v. *Gay*, [49 App. Div. 50], 63 N. Y. Supp. 543; *Dwyer* v. *Raborn*, 6 Wash. 213, [33 Pac. 350]; *Tousey* v. *Etzel*, 9 Utah, 329, [34 Pac. 291]; *Lawrence* v. *Pederson*, 34 Wash. 1, [74 Pac. 1011]; *Brown* v. *Keegan*, 32 Colo. 463, [76 Pac. 1056].

On the same principle, manifestly, the broker would not be entitled to the commission in a case like this when the owner, instead of selling the property, had only given an option for its sale.

But respondents contend that, by the execution of the lease to Pierce, the property was withdrawn from sale and therefore the commission became immediately due. In support of this position they cite *Rucker* v. *Hall*, 105 Cal. 425, [38 Pac. 962]. In that case the defendant in writing appointed the plaintiffs her agents for the sale of certain lands, and the authorization contained the following clauses: "The said J. E. Rucker and Son shall have complete control of all sales to purchasers furnished by them or through their agency, and I agree in case I shall sell or dispose of such

property to any customer furnished by said J. E. Rucker & Son, to pay them three per cent commission on such sales. Should I find a purchaser independent from said J. E. Rucker & Son, or *withdraw the property from sale* I agree to pay said J. E. Rucker & Son one-half of the above commission as compensation for their services in advertising." Mrs. Hall leased the property for a term of five years, giving the lessee "the sole and exclusive privilege of purchasing the property." It was held that the plaintiffs were entitled to their commission. It is true that certain language is used in the opinion that tends to support respondents' contention that the lease here, as far as plaintiff's right to commission is concerned, is equivalent to a sale. For instance, the court said: "The fifth finding is not justified by the evidence, in so far as it finds that Mrs. Hall did not find a purchaser or sell the property while her agreement with plaintiff was in force. It is true the lease for five years, with the exclusive privilege of purchasing, did not bind the lessee to purchase, but Mrs. Hall bound herself to sell to the lessees at any time during the continuance of the lease, and to convey upon payment of $5,000 of the purchase money. She thus placed it out of her power to complete any sale plaintiffs might make for the space of five years, or forever, as the case might be. Such contracts must have a reasonable construction. The transaction must be considered as to its effect upon her contract with the plaintiffs and not simply as to whether she had made a contract of sale such as she could in any event enforce against a purchaser. This is apparent from the further provision of the contract with the plaintiff, that, if she should withdraw the property from sale, she was bound to pay plaintiffs the same commission as though, she had made a sale to an independent person." This last sentence, as we view it, presents, really, the substantial ground for the decision. The property was withdrawn from sale in consequence of the lease, and, therefore, under the express terms of the agreement with the brokers, they were entitled to their commission. We have no such condition in the case before us. There was no agreement here to pay a commission if the property should be withdrawn from the market. We repeat, the plaintiff here was to be paid only in case of a sale. There is nothing in their agreement that precluded defendants from leas-

ing the property or granting an option to anyone to purchase
it, without incurring any pecuniary obligation to plaintiff.
Of course, we must construe the opinion of *Rucker* v. *Hall,
supra,* in accordance with the peculiar facts there in evidence.
Thus the decision can be justified, and we will not be required
to attempt the hopeless task of reconciling an expression or
two—not necessary to the decision—with what we understand
to be the universal trend of authority.

As we view it, the contention of respondents introduces an
entirely new element into the broker's agreement. It is
equivalent to interpolating into said contract the provision
that the broker shall be entitled to his commission if the owner
of the property should lease the same with the option of pur-
chase to the lessee. If, immediately after said lease was exe-
cuted, appellant had brought an action to recover his com-
missions, the only conceivable grounds for recovery would be
as follows:

1. That a ''sale'' was consummated within the meaning of
the broker's contract when a third person had taken ''an
option to purchase.'' This position is entirely untenable, as
we have already seen.

2. That the property, by the act of the owners, was with-
drawn from sale and thereby the broker was prevented from
obtaining a purchaser, and hence he should be held entitled
to his commission. The answer to this is that there was no
agreement to this effect. The parties contracted that the
plaintiff should have his commission only in case of a sale. If
during the life of the option he had produced a purchaser
ready, willing and able to buy, he probably would have earned
his commission, notwithstanding the lease, but no such ques-
tion arises here.

3. That there was an implied covenant when the brokerage
contract was executed that the owners would not lease the
property with an exclusive option to purchase, or, if they did,
that the broker would be entitled to his commission. We are
not aware of any principle of law or justice that demands
such construction. The contract, as we have construed it,
was quite favorable to the broker. He certainly had no right
to demand any further indulgence than that he receive his
commission when he procured a purchaser or the owners them-

selves obtained one ready, willing and able to buy during the existence of the brokerage contract.

The other cases cited by respondents are in harmony with the views herein expressed, as will be seen by a brief reference to them.

In *Phelan* v. *Gardner*, 43 Cal. 306, it is held that "If the owner of land employs another person to sell for him his land, at an agreed rate of commission, and the broker finds a purchaser who is willing to take the land at the price fixed, the owner cannot, by a refusal to sell to him, or by a sale to another, avoid the contract, and escape the payment of the commission." As well said by the court: "The plaintiff could do no more than procure a purchaser who was acceptable to the defendant, and willing and able to purchase the land upon terms satisfactory to him."

*Gonzales* v. *Broad*, 57 Cal. 224, was a similar case, as far as the broker's rights were concerned. There the plaintiff, having been employed by the defendant to find a purchaser for real estate, brought to him a party who was ready and willing to purchase, and with whom the defendant was satisfied and entered into an agreement to sell. Afterward, the purchaser refused to take the property, solely on the ground that the defendant's title was not satisfactory. It was held that the plaintiff did all that was required of him and was entitled to his commission.

*Smith* v. *Schiele*, 93 Cal. 144, [28 Pac. 857], is to the same effect. There it was held that "a written contract between the owner of land and real estate brokers, authorizing the brokers 'solely to sell' the land upon certain commissions, will be construed as simply conferring upon the brokers the exclusive right to sell the property and not as limiting the contract of employment solely to the consummation of a sale, so as to make the payment of the broker's commission contingent upon such consummation."

In *Quitzow* v. *Perrin*, 120 Cal. 255, [52 Pac. 632], the agent was to receive his commission at the time of the actual transfer when the "deeds of conveyance are executed," and it was provided that "If no deeds of conveyance are executed or actual transfers of property made, there will be no commission earned." It was held that there was sufficient evi-

dence of an actual transfer to support the verdict of the jury in favor of the agent.

In *Coward* v. *Clanton,* 122 Cal. 451, [55 Pac. 147], the main controversy was as to whether the contract between the owner of the realty and the real estate broker constituted a partnership. The court determined that no such relation was created, but it was held that evidence tending to show that purchasers for the entire tract, who were acceptable to and accepted by defendant, and with whom satisfactory contracts were made, were found by the plaintiff as defendant's agent, notwithstanding conflicting evidence to the contrary, is sufficient to sustain a decision that plaintiff had performed the contract on his part to sell the real estate.

In *Hoadley* v. *Savings Bank of Danbury,* 71 Conn. 599, [42 Atl. 667, 44 L. R. A. 321], the disputed question was whether the broker was the procuring cause of the sale, and it was held that, although the broker was not given the exclusive sale of the property and the owner himself made the sale, the broker will be entitled to his commissions if he was the procuring cause of the sale, and after he has rendered the services which made him the procuring cause the owner cannot escape liability by telling him that no commission will be paid in case the property brings only a certain price.

*Lunney* v. *Healey,* 56 Neb. 313, [76 N. W. 558, 44 L. R. A. 593], simply reaffirms the familiar doctrine that "where a real estate broker contracts to produce a purchaser who shall actually buy, he has performed his contract by the production of one financially able with whom the owner actually makes an enforceable contract of sale." In the notes to the last two cases the whole subject of real estate brokers' commissions is ably and exhaustively treated and a vast number of cases is cited, but we find nothing therein inconsistent with appellant's position here.

*Hill* v. *McCoy,* 1 Cal. App. 159, [81 Pac. 1015], was decided upon conflicting evidence as to whether the agent was the procuring cause of the sale, and it was held that the finding of the lower court that the agent was entitled to his commission was sufficiently supported.

This is not a case, we may repeat, where the owners, by the execution of their lease and option to purchase, were acting in bad faith or were attempting to avoid their contract

with the agent. On the contrary, they were acting entirely within their rights, and, as a matter of fact, the lease with its option to purchase was a step toward the consummation and in contemplation of a sale that would entitle the agent to his compensation. All parties in interest had a right to assume that no claim for commission could be successfully asserted unless the agent or the owners should secure a purchaser ready and willing to buy the property.

We cannot avoid the conclusion that it was erroneous to hold that the plaintiff was entitled to his commission when said lease was executed. We think, therefore, the action was not barred by the statute of limitations, and the judgment is reversed.

Hart, J., and Chipman, P. J., concurred.